**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01921-NYW

ROBERTA STEPP GARRISON,

     Plaintiff,

v.

THE ADMINISTRATIVE COMMITTEE OF DELTA AIR LINES, INC.,
DELTA FAMILY-CARE DISABILITY AND SURVIVORSHIP PLAN, and
DELTA AIR LINES, INC.,

     Defendants.

---

**MEMORANDUM OPINION AND ORDER
AND ORDER TO SHOW CAUSE**

---

Magistrate Judge Nina Y. Wang

     This matter is before the court on Plaintiff's Amended Motion for Partial Summary Judgment on Her First Claim for Relief and Memorandum in Support (the "Motion for Summary Judgment") filed on April 21, 2021 [Doc. 27] and the Joint Motion for Determination of ERISA Case (the "Motion for Determination") filed on August 24, 2021 [Doc. 34] (collectively, the "Motions"). The undersigned considers the Motions pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes dated September 2, 2020. *See* [Doc. 10]. Upon review of the Motions and associated briefing, the applicable case law, and the Administrative Record, the Motion for Determination is **GRANTED** and the Motion for Summary Judgment is **DENIED**.

## FINDINGS OF FACT[1]

Based on the Administrative Record, the court makes the following findings of fact.  Ms. Garrison married Richard Stepp ("Mr. Stepp") on January 12, 1981.  [Doc. 21-1 at 3].[2]  Mr. Stepp started working for Defendant Delta Air Lines, Inc. ("Delta") on February 15, 1969 and retired on March 1, 2005.  [*Id.*].  Mr. Stepp passed away in 2013.  [*Id.*].  After Mr. Stepp's death, Ms. Garrison remarried on April 21, 2018, at the age of 58.  [*Id.*].

Delta provides a Delta Family-Care Disability and Survivorship Plan (the "Plan") which provides disability and survivor benefits to those who participate in the Plan and their beneficiaries.  *See generally* [Doc. 21-2].  The Administrative Committee of Delta Air Lines, Inc. (the "Committee"), a Defendant in this matter, is the Plan Administrator, [Doc. 21-3 at 68], and retains "[t]he discretionary authority to interpret and construe the Plan, and decide all questions of eligibility of any Eligible Family Member to participate in the Plan or to receive benefits under it, its interpretation and decisions to be final and conclusive."  [Doc. 21-2 at 42].  The Committee does not manage or control the assets of the Plan; rather, this power is reserved for a Benefit Funds Investment Committee.  [*Id.* at 44].

---

[1] "In an action tried on the facts without a jury . . ., the court must find the facts specifically and state its conclusions of law separately."  *Miles v. Unified Sch. Dist. No. 500*, No. 17-2685-DDC-TJJ, 2019 WL 3858165, at *1 (D. Kan. Aug. 16, 2019) (quoting Fed. R. Civ. P. 52(a)(1)), *aff'd*, 855 F. App'x 433 (10th Cir. 2021).  In their Motion for Determination, the Parties do not expressly seek a court determination in place of trial, but instead "move for the determination of this case under the Employee Retirement Income Security Act of 1974."  [Doc. 34 at 1 (emphasis added)].  For the reasons set forth more fully below, this court construes the Parties' filing of the Motion for Determination as an agreement that, with respect to the merits of Claim One, the only Claim presently before the court, no trial is required.

[2] Because the Administrative Record consists of multiple documents, *see* [Doc. 21-2; Doc. 21-2; Doc. 21-3]; *see also* [Doc. 21], the court cites to the Administrative Record using the document and page numbers generated by this District's Electronic Case Filing ("ECF") system.

The Plan offers a Monthly Income Survivor Benefit (the "Survivor Benefit") which is payable for ten years following the death of a Delta employee or former employee subject to the Plan. [*Id.* at 9; Doc. 21-1 at 3]. The Plan provides that the payment of the Survivor Benefit may be subject to be offset by other benefits; specifically, the Plan dictates that the Survivor Benefit is to be reduced by, in pertinent part, "100% of the available Family Social Security [B]enefit as defined in Section 1.20." [Doc. 21-2 at 32]. Section 1.20 of the Plan defines "Family Social Security Benefit" as:

> the total amount which would be available or the amount actually paid to the Employee's Eligible Family Members, whichever is greater, as a monthly disability, survivorship, or old age benefit, inclusive of benefits for relatives or dependents, under the Federal Social Security Act or under any similar Governmental Act or Acts (whether Domestic or Foreign) as now existing or subsequently amended, superseded, or created, whether or not payment of such amount is delayed, suspended, or forfeited because of failure to apply, other work, or for any other reason.

[*Id.* at 8].

Ms. Garrison became eligible to receive the Survivor Benefit upon Mr. Stepp's death. [Doc. 21-1 at 3]. Ms. Garrison began receiving monthly payments of $1,551.18, which sum was calculated based on Ms. Garrison's maximum monthly benefit of $1,932.69 less a $381.51 Survivor Annuity to which she was also entitled under the Plan. [*Id.* at 3-4, 11].

On February 7, 2017, the Delta Employee Service Center (the "Delta ESC") informed Ms. Garrison that, as Mr. Stepp's widow, Ms. Garrison would be eligible to receive a benefit (the "Widow's Benefit") from the Social Security Administration ("SSA") upon her 60th birthday. [Doc. 21-1 at 13]. The letter stated that Ms. Garrison's Survivor Benefit payment would be reduced by the Widow's Benefit "whether or not payment of [the Widow's Benefit] is delayed, suspended, reduced, or forfeited." [*Id.*].

The Delta ESC sent Ms. Garrison another letter on May 24, 2019, informing her that it had estimated that her Widow's Benefit would be $1,626.00 and that the Delta ESC would "apply the offset accordingly, effective July 1, 2019." [*Id.* at 15]. The Delta ESC further reiterated that it would reduce the Survivor Benefit by the Widow's Benefit, whether or not payment of the Widow's Benefit was "delayed, suspended, reduced, or forfeited," and that, after applying Ms. Garrison's offsets (the Survivor Annuity and the Widow's Benefit) to her maximum monthly benefit, "there is currently no benefit due from the [Plan] effective July 1, 2019." [*Id.*]. The Delta ESC informed Ms. Garrison of her right to appeal the termination of her Survivor Benefit to the Administrative Subcommittee of the Delta Family-Care Plans (the "Subcommittee"). [*Id.*].

Meanwhile, on May 29, 2019, the SSA sent Ms. Garrison a letter informing her that, because she had remarried prior to the age of 60, she was not entitled to receive the Widow's Benefit. [*Id.* at 17]. A second SSA letter dated June 7, 2019 informed Ms. Garrison that, to qualify for the Widow's Benefit under the Social Security Act (the "Act"), the recipient must meet one of three criteria: (1) the recipient is not then married; (2) the recipient remarried, but only after the age of 60; or (3) the recipient remarried, but only after the age of 50 and while the recipient was entitled to benefits as a disabled widow. [*Id.* at 21]. Ms. Garrison did not meet any of these criteria. *See generally* [*id.*]. Ms. Garrison submitted these letters (the "SSA letters") to the Delta ESC to demonstrate that she was "not entitled to [the Widow's Benefit] because [she is] remarried" and to show that she is thus "entitled to benefits from Delta Family-Care Disability Survivorship Trust" despite her remarriage. [*Id.* at 16, 20]. Ms. Garrison asserted that she "should continue to receive the Delta Family Care Disability Survivorship Trust until [she had] received it for a total of 10 years." [*Id.* at 16].

The Subcommittee reviewed the reduction in Ms. Garrison's benefits on appeal and, on July 31, 2019, maintained the original determination of the denial of benefits. [*Id.* at 26]. The Subcommittee explained that, under the terms of the Plan, the Survivor Benefit was to be offset by any amount which would be available to Ms. Garrison under the Act, even if she "[did] not actually receive part of or all of any such benefit for any reason," such as delay, suspension, or forfeiture of the benefit. [*Id.*]. Thus, although Ms. Garrison did not actually receive any Widow's Benefit, which the Subcommittee acknowledged, *see* [*id.* at 27], the Subcommittee concluded that because Ms. Garrison "became eligible for [the Widow's Benefit]" upon her 60th birthday, such amount would offset her Survivor Benefit regardless of whether she actually received the Widow's Benefit. [*Id.*].

On August 23, 2019, Ms. Garrison appealed the Subcommittee's decision on the basis that, because she did not qualify, and had never qualified, for the Widow's Benefit, she could not have "delay[ed], suspend[ed], or forfeit[ed]" the Benefit pursuant to the Plan terms. [*Id.* at 24]. Ms. Garrison was notified on September 13, 2019 that the Committee would review her appeal of the Subcommittee's decision. [*Id.* at 25]. On November 26, 2019, the Committee informed Ms. Garrison that it was upholding the Subcommittee's denial of benefits, stating, *inter alia*, that Ms. Garrison had "forfeited [the Widow's Benefit] due to [her] remarriage prior to age 60." [*Id.* at 4]. And because the Widow's Benefit offset was to be applied regardless of whether Ms. Garrison actually received the Widow's Benefit, the Committee informed Ms. Garrison that "no monthly [Survivor Benefit] is currently payable to you under the [Plan]." [*Id.* at 4].

Ms. Garrison initiated this civil action on July 1, 2020 [Doc. 1] and filed a First Amended Complaint on August 12, 2020 against the Committee, Delta, and the Plan (collectively, "Defendants"). [Doc. 7]. Seeking judicial review of the denial of her monthly Survivor Benefit

payments, Plaintiff asserts four Claims: (1) the wrongful denial of benefits against all Defendants (Claim One); (2) breach of fiduciary duty against the Committee (Claim Two); (3) breach of co-fiduciary duty against Delta (Claim Three); and (4) breach of fiduciary duty and prohibited transaction against the Committee and Delta (Claim Four). [*Id.* at 17-20]. Upon the Parties' unanimous consent, *see* [Doc. 10], this case was referred to the undersigned Magistrate Judge for all purposes. [Doc. 13]. On April 21, 2021, Ms. Garrison filed the instant Motion for Summary Judgment—requesting only summary judgment as to Claim One—seeking a court order directing the Committee "to immediately reinstate Plaintiff's monthly income [Survivor Benefit] retroactive to the date it was terminated." [Doc. 27 at 1, 20]. Defendants responded on May 3, 2021, [Doc. 31], and Plaintiff has since replied. [Doc. 32]. Additionally, on August 24, 2021, the Parties filed the Joint Motion for Determination, stating that "the briefing of the merits has been completed" and moving "for the determination of this case" under the Employee Retirement Income Security Act ("ERISA"). [Doc. 34 at 1]. The court, being fully advised in the applicable law and the Parties' arguments, now makes the following conclusions of law.

## CONCLUSIONS OF LAW

### I.     Procedural Posture

"Parties may present a dispositive motion in a case under ERISA such as this one either as a motion for a bench trial on the papers or as a motion for summary judgment." *Kaferly v. Metro. Life Ins. Co.*, 189 F. Supp. 3d 1085, 1091-92 (D. Colo. 2016). "[S]ummary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010). In an ERISA

case challenging a benefits determination, the district court "acts as an appellate court and evaluates the reasonableness of a plan administrator's decision based on the evidence in the administrative record." *Shafer v. Metro. Life Ins. Co.*, No. 14-cv-00656-RM-KMT, 2015 WL 4055473, at *5 (D. Colo. July 2, 2015).

## II.    Standard of Review

### A.    Applicable Law

In reviewing an ERISA decision, the court "must first determine the appropriate standard to be applied to [the administrator's] decision to deny benefits." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008).   Typically, "the plan administrator's decision is reviewed by the court de novo unless the terms of the benefit plan give the administrator discretion to interpret the plan and award benefits." *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1279 (10th Cir. 2020) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).   When a plan administrator has expressly retained such authority, the court reviews the administrator's decision under a deferential "arbitrary and capricious" standard.   *Weber*, 541 F.3d at 1010.   Here, the Plan states that the Committee has the "discretionary authority to interpret and construe the Plan, and decide all questions of eligibility of any Eligible Family Member to participate in the Plan or to receive benefits under it, its interpretation and decisions to be final and conclusive," [Doc. 21-2 at 42], and the Parties agree that the Plan provides the Committee such discretion.   [Doc. 27 at ¶ 3; Doc. 31 at ¶ 3].

However, even if the administrator has substantial discretion in interpreting a plan, the administrator's decision is entitled to less deference if its review or decision is marred by "serious procedural irregularities;" in that case, the Tenth Circuit has "applied de novo review where deferential review would otherwise be required."   *Martinez v. Plumbers & Pipefitters Nat'l*

*Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015).   ERISA regulations require that the plan administrator furnish a decision to the claimant within an appropriate time, which "must provide the claimant with a comprehensible statement of reasons for the denial," and on review, the administrator must "include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (citing 29 C.F.R. § 2560.503-1).   In addition, ERISA mandates a "full and fair review" of the administrator's decision, which includes providing the claimant a "reasonable opportunity to appeal" through a process that takes into account "all comments, documents, records, and other information submitted by the claimant relating to the claim." *Raymond M. v. Beacon Health Options, Inc*., 463 F. Supp. 3d 1250, 1267 (D. Utah 2020) (citing 29 C.F.R. § 2560.503-1(h)(2)-(3)).

Thus, procedural irregularities include "cherry-picking" the administrative record to find evidence to support a denial, *Paquin v. Prudential Ins. Co. of Am*., No. 16-cv-02142-RBJ, 2018 WL 3586397, at *5 (D. Colo. July 26, 2018), failing to comply with ERISA's mandated time limits in deciding the administrative appeal, or failing to issue a decision on the claim altogether. *Pentland v. Metro. Life Ins. Co.*, 519 F. Supp. 3d 876, 883 (D. Colo. 2021).   While "[a] claims administrator's 'single honest mistake' does not warrant reducing the degree of deference," *Raymond M.*, 463 F. Supp. 3d at 1268 (quoting *Conkright v. Frommert*, 559 U.S. 506, 509 (2010)), "vesting the administrator with deference in the face of numerous or severe procedural deficiencies would frustrate ERISA's core purpose of 'promot[ing] the interests of employees and their beneficiaries in employee benefit plans.'" *Id.* (quoting *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 90 (1983)).

### B.      Procedural Irregularities

Ms. Garrison argues that procedural irregularities in this case warrant reduced deference, if not de novo review.  [Doc. 27 at 18].  She raises four arguments in support of this assertion: first, that the Committee operated under a "structural conflict of interest;" second, that there is no indication that the Committee actually considered the SSA letters in reaching its decision; third, that "the vague, conclusory references to a general Social Security blog lacked any clear application to Plaintiff's circumstances, and [the blog] was only identified in the final denial letter;" and fourth, the Committee, in rendering its decision, failed to consider the governing SSA regulations regarding Ms. Garrison's eligibility for and entitlement to the Widow's Benefit.  [*Id.* at 19].  The court first addresses Plaintiff's latter three assertions before considering whether she has established a conflict of interest in this case.

***The SSA Letters***.  First, Plaintiff argues that the Committee's failure to discuss the SSA letters or explain "why they were wrong or inapplicable" was improper.  [Doc. 27 at 19]. Defendants respond that "[t]he Committee's [denial] letter references those [SSA] letters" and assert that "the Committee's rationale—that under the Plan [it] did not matter if Plaintiff remarried before receiving Social Security benefits or after—made it irrelevant to plumb the details of those letters."  [Doc. 31 at 23].

The Committee's denial letter states that it "reviewed and noted" the SSA letters dated May 29, 2019 and June 7, 2019.  [Doc. 21-1 at 3].  It then states that "widows are eligible to receive a benefit from the Social Security Administration" upon attaining the age of 60.  [*Id.* at 4].  Finally, it explains—in bold text—that, because the Widow's Benefit is to be deducted "whether or not payment of this benefit is delayed, suspended, or forfeited because of failure to apply, other work, or for any other reason," and because the Committee "agreed that [Plaintiff] forfeited that benefit

due to [her] remarriage prior to age 60," the Committee concluded that the Survivor Benefit should nevertheless be offset by the Widow's Benefit, notwithstanding the fact that Plaintiff did not receive the Widow's Benefit.  [*Id.*].

Without passing on the correctness of the Committee's decision, the court cannot conclude that the Committee's failure to expressly address why the SSA letters were "wrong" or "not applicable" to Plaintiff's case, *see* [Doc. 27 at 19], was a procedural irregularity that warrants less deferential review.  As an initial matter, the court notes that the Committee did not expressly find that the SSA's interpretation of Plaintiff's eligibility for the Widow's Benefit was "wrong" or inapplicable—rather, the Committee found that, based on the Plan terms and its interpretation that Ms. Garrison's remarriage constituted a "forfeit[ure]" of the Widow's Benefit, her actual receipt of the benefit was not determinative of the applicability of the offset.  *See* [Doc. 21-1 at 4 (the Committee explaining that, in its determination, Plaintiff forfeited her Widow's Benefit upon her remarriage)].  Moreover, the Committee's discussion of Plaintiff's remarriage and finding that her remarriage constitutes a forfeiture of the Widow's Benefit itself suggests that the Committee considered the SSA letters, which explained Plaintiff's non-entitlement to the Widow's Benefit. *See* [*id.* at 17, 21].

While the court agrees that additional explanation or discussion as to the Committee's finding of a forfeiture might have been informative, "inconsequential . . . procedural irregularities would not entitle the claimant to *de novo* review."  *Gilbertson*, 328 F.3d at 635.  The court finds that the Committee's letter adequately explains why the SSA letters did not materially factor into its decision: it believed that Ms. Garrison's remarriage constituted a forfeiture of the Widow's Benefit, notwithstanding the SSA's simultaneous determination that Ms. Garrison was not eligible to receive that Benefit due to her remarriage.  *See* [Doc. 21-1 at 3].  The SSA letters—which

indicated that Ms. Garrison was not eligible to receive the benefit due to her remarriage—can thus be read in harmony with the Committee's finding of forfeiture.  The court does not find any significant procedural irregularity here.

*The Social Security Blog Post*.  Next, Plaintiff argues that the Committee failed to link its reference to an SSA blog post to Plaintiff's circumstances and only referenced this blog post in its final denial letter, leaving Plaintiff "with no opportunity to contest reliance on that blog."  [Doc. 27 at 19]; *see also* [Doc. 21-1 at 4 (the Committee referencing the blog post in its denial letter; Doc. 21-1 at 40-41 (SSA blog post dated September 5, 2017 and titled "Will Remarriage Affect my Social Security Benefits?")].[3]  But the failure to reference a source in a first denial letter does not constitute a procedural irregularity requiring de novo or less deferential review.  *Cf. Pentland*, 519 F. Supp. 3d at 884 (finding that the defendant's failure to reference a specific plan provision in its first denial letter "[did] not require the Court to temper its deference" where the second denial letter contained the provision).  Moreover, Plaintiff's argument that the blog post "lacked any clear application to Plaintiff's circumstances," [Doc. 27 at 19], is respectfully unavailing.   The Committee references the blog post in a footnote to its conclusion that Ms. Garrison forfeited the Widow's Benefit, stating:

> According to a post regarding the impact of remarriage on Social Security benefits published in the Social Security Administration's blog, Social Security Matters, 'if you remarry before you turn 60 and that marriage ends, you may become entitled or re-entitled to benefits on your prior deceased spouse's earnings record.'  . . . Based on this, the Committee noted that your entitlement to widow benefits based on your marriage to Mr. Stepp were not permanently extinguished.

[Doc. 21-1 at 4 n.1].  Not only is the footnote merely explanatory, rather than a main basis for the Committee's decision, the court finds that the Committee's purpose in citing the blog was simply

---

[3] Ms. Garrison does not argue that it was error in general for the Committee to cite the blog post. *See* [Doc. 27].

to acknowledge the fact that Ms. Garrison was not then receiving the Widow's Benefit due to her remarriage and to suggest that, while Ms. Garrison's remarriage resulted in a forfeiture of the Widow's Benefit, it did not constitute an irreversible forfeiture. But because this was not an actual basis of the Committee's decision, the court finds no procedural irregularity here.

*The Social Security Regulations*. Plaintiff additionally argues that a procedural irregularity exists because the Committee failed to reference or consider the SSA regulations governing her eligibility for the Widow's Benefit. [Doc. 27 at 19]. Ms. Garrison does not cite the specific regulations she argues should have been considered, *see* [*id.*], but the court assumes that Ms. Garrison refers to 20 C.F.R. § 404.335. *See* [*id.* at 13 (Plaintiff asserting that the Committee "relied on an SSA website blog post when the applicable Social Security regulation, Title 20 C.F.R. § 404.335, dictates that Garrison has never been entitled to a Widow's Benefit.")].

Section 404.335 provides that the SSA will find a claimant entitled to a Widow's Benefit if the claimant meets five requirements: (1) the claimant is a widow or widower who meets certain other eligibility requirements; (2) the claimant applies for benefits; (3) the claimant is at least 60 years old or is at least 50 years old and has a disability; (4) the claimant is not entitled to an "old-age benefit," and (5) the claimant is not married. *See* 20 C.F.R. § 404.335(a)-(e).

The court does not find a procedural irregularity here. First, the court notes that Plaintiff does not argue, and the Administrative Record does not establish, that Plaintiff made any argument under the SSA regulations during her appeals process, *see, e.g.*, [Doc. 21-1 at 16, 20 (Plaintiff's letters not referencing the regulations); *id.* at 17, 21 (the SSA letters not referencing the regulations)], so as to show that the Committee failed to consider "all comments, documents, records, and other information submitted by the claimant relating to the claim," 29 C.F.R. § 2560.503-1(h)(2)(iv), nor does Plaintiff cite any case law establishing that it was procedurally

erroneous for the Committee to not consider or discuss the SSA regulations. *See* [Doc. 27]. Moreover, the Committee plainly does not ignore the fact that Ms. Garrison cannot receive the Widow's Benefit because she has remarried. *See* [Doc. 21-1 at 4]. Rather, the Committee expressly found that her remarriage constitutes a "forfeit[ure]" under the terms of the Plan and thus, it was appropriate, pursuant to the Plan terms, to offset the Survivor Benefit by the Widow's Benefit. *See* [*id.*]. To the extent Ms. Garrison argues that the Committee's interpretation or decision is incorrect, this argument goes to the substantive denial of her claim, not the existence of procedural irregularities, and is further addressed below.

    ***Conflict of Interest***. Finally, Plaintiff argues that there is an "admitted structural conflict of interest of the Committee" because (1) Delta is the Plan sponsor; (2) Subcommittee and Committee members are employed by Delta; (3) Delta pays the costs of the monthly Survivor Benefit; (4) each Committee member knew that Delta was making ongoing contributions to the Plan during the period of that individual's membership on the Committee; and (5) any reduction in a participant's monthly Survivor Benefit resulting from an offset "results in greater retained assets in the Plan." [Doc. 27 at 11-12, 19]. Defendants do not expressly concede that a structural conflict exists in this case, but assert that any conflict of interest is mitigated by the structure of the Plan, which "separates the mechanism for deciding the claims and interpreting the Plan" from "the requirement to ensure the proper funding of the Plan." [Doc. 31 at 14].

    Where the plan administrator operates under a conflict of interest, the court decreases its deference "in proportion to the seriousness of the conflict." *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009). "[T]he burden of proof is on the plaintiff to prove the existence of the conflict," *Wolberg v. AT & T Broadband Pension Plan*, 123 F. App'x 840, 845 (10th Cir. 2005) (unpublished), which requires the submission of "[s]ome proof (supplied by the claimant)"

which demonstrates "a conflict that could plausibly jeopardize the plan administrator's impartiality." *Adamson v. Unum Life Ins. Co. of Am*., 455 F.3d 1209, 1213 (10th Cir. 2006).

Here, Plaintiff has not met this burden.  With the exception of her assertion that Delta pays the entire cost of the monthly income survivor benefits, *see* [Doc. 27 at 12 (citing [Doc. 21-3 at 50])], Plaintiff's citations in support of her argument do not cite to the Administrative Record— rather, she cites to her Amended Complaint and Defendants' Answer, which are not part of the Administrative Record, and Defendants' discovery answers, which are not part of the Administrative Record or the case docket.  *See* [Doc. 27 at 11-12].  Generally, when reviewing a plan administrator's decision, the court's review is limited to the Administrative Record, i.e., "the materials compiled by the administrator in the course of making his decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002).  However, "this general restriction does not *conclusively* prohibit a district court from considering extra-record materials related to an administrator's dual role conflict of interest." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010) (emphasis added); *see also id.* at 1158 ("[I]f the district court cannot consider material beyond the administrative record, it may not be able to fulfill its judicial task of allocating the proper weight to the conflict of interest.").  Accordingly, "[e]vidence of a conflict of interest may appear on the face of the plan, by evidence of improper incentives, or through proof of a pattern or practice of unreasonably denying meritorious claims." *Rickaby v. Hartford Life & Accident Ins. Co*., No. 15-cv-00813-WYD-NYW, 2016 WL 1597589, at *2 (D. Colo. Apr. 21, 2016) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 123 (2008) (Roberts, J., concurring)).

Plaintiff has not presented such evidence here.  The Parties had an opportunity to conduct discovery prior to submitting their merits briefing, *see* [Doc. 17 at 2 (the Scheduling Order stating

that the Parties "have agreed to serve discovery requests consistent with" the arbitrary and capricious standard of review); *id.* at 3 (setting a February 15, 2021 discovery deadline)], but Plaintiff has submitted essentially no evidence arising out of this discovery. *See generally* [Doc. 27]. While she cites to Defendants' discovery answers, such answers are not part of the record before the court—in the Administrative Record or anywhere on the court docket—rendering this court's consideration of those answers impossible. At best—assuming, without deciding, that the court can consider Plaintiff's Amended Complaint and Defendants' Answer admissions in determining whether a conflict of interest exists—Plaintiff has shown: (1) Delta is the sponsor of the Plan; Delta employs the members of the Subcommittee and Committee; and (3) Delta pays the entire cost of the monthly Survivor Benefit. *See* [Doc. 7 at ¶¶ 3, 5]; [Doc. 18 at ¶¶ 3, 5]; [Doc. 21-3 at 50]. But the mere fact that Delta both employs the individuals making benefits decisions and also pays the monthly Survivor Benefit is insufficient, standing alone, to demonstrate a conflict of interest. "The mere fact that the plan administrator was a company employee is not enough *per se* to demonstrate a conflict." *Wolberg*, 123 F. App'x at 845 (alterations and quotation omitted).

Indeed, ERISA permits an employer to act simultaneously as the plan administrator. *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). A mere likelihood that the plan administrator will realize some economic impact in granting or denying benefits is insufficient to establish a "legally cognizable conflict of interest." *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1133 (10th Cir. 2011) ("[A] generalized economy incentive, . . . without more, is insufficient to rise to the level of a legally cognizable conflict of interest.") (quotation omitted). Rather, a plan administrator's economic interest in the denial of benefits creates a conflict of interest only if "the provision of benefits had a *significant economic impact* on the company administering the plan." *Finley v. Hewlett-Packard Co. Empl. Benefits Org. Income Prot. Plan*,

379 F.3d 1168, 1176 (10th Cir. 2004) (emphasis added); *see also Waugh v. Williams Cos., Inc.*,
No. 07-cv-0446-CVE-SAJ, 2008 WL 2673359, at *11 (N.D. Okla. June 27, 2008) (citing *Finley*,
379 F.3d at 1175) ("While the Plan: (i) is self-funded, and TWC (ii) appointed and compensated
the Administrative Committee as employees, and (iii) appointed and likely compensated Kemper
as the Claims Administrator, there is no evidence in the record that these decisionmakers 'receive
financial or evaluative incentives for denying claims' or that the provision of benefits has a
significant impact on either Kemper or TWC.  Thus, this is not a basis for the Court to reduce its
level of deference to the Plan's decision.").

Because Plaintiff has submitted no evidence demonstrating a conflict of interest beyond an
assertion that Delta has some generalized financial incentive in the denial of benefits, the court
cannot find that a legally cognizable conflict of interest exists so as to require less deferential
review based on procedural irregularities.  *Wolberg*, 123 F. App'x at 845; *Cf. Garner v. U.S. W.
Disability Plan*, No. 05-cv-00116-PSF-BNB, 2006 WL 894889, at *4 (D. Colo. Mar. 31, 2006)
(where the plaintiff had "produced no evidence as to how denials [of benefits] actually relate to"
the alleged financial incentive, finding that the plaintiff had not carried her burden to establish an
actual conflict of interest).

For all of these reasons, the court is not persuaded that procedural irregularities exist in this
case which warrant a less deferential standard of review.  Accordingly, the court reviews the
Committee's decision to determine whether it was arbitrary and capricious.  *Ellis*, 958 F.3d at
1279.

### C.   Arbitrary and Capricious Review

In ERISA cases, "arbitrary and capricious" review is interchangeable with a review for an
abuse of discretion.  *Weber*, 541 F.3d at 1011 n.10.  "Under the arbitrary and capricious standard

of review, the Plan's decision need not be the only logical decision nor even the best decision. Rather, the decision need only be sufficiently supported by facts known to the Plan to counter a claim that the decision was arbitrary or capricious." *McClenahan v. Metro. Life Ins. Co.*, 621 F. Supp. 2d 1135, 1144 (D. Colo. 2009), *aff'd*, 416 F. App'x 693 (10th Cir. 2011). Arbitrary and capricious review is limited to a determination of whether the administrator's decision was "reasonable and made in good faith," *Shafer*, 2015 WL 4055473, at *6, and a decision is reasonable of it is based on substantial evidence in the Administrative Record—"*i.e.*, that evidence which a reasonable mind might accept as adequate to support the conclusion reached." *Paquin*, 2018 WL 3586397, at *5. This standard of review is a "difficult one for a claimant to overcome." *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002).

## III.    Analysis

Plaintiff argues that the Committee's decision to reduce or deny her Survivor Benefit should be reversed because, due to her remarriage, she was never eligible or entitled to receive the Widow's Benefit, and thus her Survivor Benefit should not have been reduced by any Widow's Benefit. [Doc. 27 at 13]. More specifically, Plaintiff asserts that, under the plain language of the Plan, because she could never have received the Widow's Benefit, the payment of such Benefit was never "available" to her, and for this reason, "there was no payment to delay, suspend, or forfeit by the clear terms of the Plan." [*Id.* at 15]. In response, Defendants contend that, pursuant to the Plan's terms, the Widow's Benefit offset was appropriate because the Widow's Benefit would have been available to Plaintiff had she not forfeited that payment when she remarried. [Doc. 31 at 16].

"When reviewing an administrator's decision, the Court can consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision,

based on the asserted rationale, was arbitrary and capricious." *Johnson v. Hewlett Packard Enters. Co.*, No. 19-cv-01878-RBJ, 2021 WL 2254965, at *9 (D. Colo. June 3, 2021) (quotation omitted). The court "make[s] that determination based on the language of the plan," *Weber*, 541 F.3d at 1011, "consider[ing] 'the plan documents as a whole.'" *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1223 (10th Cir. 2021) (quoting *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007)).

Where, as here, the administrator's decision turns on an interpretation of the Plan terms, "the arbitrary and capricious review encompasses the contract law standard of ambiguity." *Oomrigar v. Unum Life Ins. Co. of Am.*, No. 2:16-cv-940 TS, 2017 WL 3913277, at *5 (D. Utah Sept. 6, 2017). Ambiguity exists if a plan provision is "reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1290 (10th Cir. 2000). In analyzing whether plan terms are ambiguous, the court "consider[s] the common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." *Weber*, 541 F.3d at 1011. If the plan documents are unambiguous, the court construes them as a matter of law, *Miller*, 502 F.3d at 1250, and applies those plan provisions "as written." *Carlile*, 988 F.3d at 1223. If the provision is unambiguous and the administrator's interpretation strays from the unambiguous meaning, then the administrator's interpretation is unreasonable and its decision to deny benefits based on the unreasonable interpretation is arbitrary and capricious. *Scruggs v. ExxonMobil Pension Plan*, 585 F.3d 1356, 1362 (10th Cir. 2009).

If the Plan terms are ambiguous, however, and the administrator "adopts one of two or more reasonable interpretations, then the plan administrator's decision to deny benefits based on that interpretation survives arbitrary and capricious review." *Degrado v. Jefferson Pilot Fin. Ins.*

*Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 279019, at *19 (D. Colo. Feb. 5, 2009); *see also Caldwell v. UNUM Life Ins. Co. of Am.*, 786 F. App'x 816, 818 (10th Cir. 2019) (unpublished) ("A decision denying benefits based on an interpretation of an ERISA provision survives arbitrary and capricious review so long as the interpretation is reasonable.") (quotation omitted); *Shafer*, 2015 WL 4055473, at *6 (under the arbitrary and capricious standard, a decision will not be set aside if it is "based on a reasonable interpretation of the plan's terms and made in good faith").[4]

**Whether the Plan Terms are Ambiguous**.  First, the court must determine whether the terms of the Plan are ambiguous.  As set forth above, a term is ambiguous if it is susceptible to more than one meaning or if its meaning is uncertain.  *Stewart*, 217 F.3d at 1290.  In analyzing whether plan terms are ambiguous, the court "consider[s] the common and ordinary meaning as a reasonable person in the position of the plan participant . . . would have understood the words to mean." *Weber*, 541 F.3d at 1011.

Plaintiff argues that the Plan is not ambiguous.  [Doc. 27 at 13].  More specifically, Ms. Garrison argues that, pursuant to the plain language of the Plan, the amount to be offset against her Survivor Benefit had to be the amount either available or the amount actually paid to Ms.

---

[4] Other courts in this Circuit considering whether a plan administrator's decision was reasonable consider whether the decision was (1) the result of a reasoned and principled process; (2) consistent with prior interpretations by the plan administrator; (3) reasonable in light of any external standards; and (4) consistent with the purposes of the plan. *Smith v. Metro. Life Ins. Co.*, 344 F. Supp. 2d 696, 701 (D. Colo. 2004); *Pikas v. Williams Cos., Inc.*, No. 08-cv-101-GKF-PJC, 2013 WL 622234, at *3 (N.D. Okla. Feb. 20, 2013).  These factors "attempt to create a workable checklist that can replace the essential (albeit somewhat abstract) inquiry of whether or not the decision was reasonable." *Phelan v. Wyo. Associated Builders*, 574 F.3d 1250, 1257 (10th Cir. 2009).  But in reviewing an administrator's decision under an arbitrary-or-capricious standard, the court is limited to the Administrative Record.  *See Weber*, 541 F.3d at 1011.  In this case, the Administrative Record provides little guidance as to these factors, and neither Party substantively addresses these factors in their briefing.  *See* [Doc. 27 (Plaintiff listing the factors, but not substantively discussing them)]; [Doc. 31].  Because "neither party addresses these questions specifically and the record reveals little about [the administrator's] claims assessment process," the court is "left to [its] own analytic devices." *Weber*, 541 F.3d at 1011.

Garrison under the Act.  [*Id.* at 15].  Ms. Garrison focuses on the use of the words "available" and "payment," arguing that because she was never eligible or entitled to the Widow's Benefit, no payment was ever available to her and there was thus no payment to delay, suspend, or forfeit. [*Id.*].  Defendants offer no express argument as to whether the Plan terms are ambiguous or unambiguous.  *See* [Doc. 31].  They do, however, assert that the Plan terms "plainly support" the Committee's decision, [*id.* at 16], which the court construes as an assertion that the Plan terms are unambiguous.  *Cf. Carlile*, 988 F.3d at 1223 (unambiguous terms are construed as written). According to Defendants, the plain language of the Plan supports the Committee's denial of benefits because the Plan terms provide for an offset of any benefits that "would be available" unless forfeited for any reason, and by remarrying before age 60, Ms. Garrison forfeited her ability to receive the Widow's Benefit.  [Doc. 31 at 16-17].[5]

Having carefully reviewed the Plan terms and the Parties' respective arguments, the court respectfully disagrees with both Parties and finds that the relevant Plan terms are ambiguous.  The Plan states that the Survivor Benefit shall be reduced by "100% of the available Family Social Security [B]enefit as defined in Section 1.20."  [Doc. 21-2 at 32].  Under Section 1.20, Family Social Security Benefit is defined as:

> the total amount which would be available[6] . . . to the Employee's Eligible Family Members,[7] whichever is greater, as a monthly disability, survivorship, or old age benefit . . . under [the Act] . . . whether or not payment of such amount is delayed,

---

[5] Insofar as Defendants argue that Plaintiff's remarriage may constitute a suspension of her Widow's Benefit, *see* [Doc. 31 at 16], the court disregards this argument.  On review, the court is limited to reviewing the rationale set forth by the administrator in its decision, *Johnson*, 2021 WL 2254965, at *9, and the Committee expressly found that the remarriage constituted a forfeiture of benefits—not a suspension.  *See* [Doc. 21-1 at 4].

[6] The Parties agree that Ms. Garrison was never paid the Widow's Benefit and instead focus on whether the Widow's Benefit was "available" to her.  *See* [Doc. 27; Doc. 31].

[7] The Parties do not dispute that Plaintiff is an Eligible Family Member.  *See* [Doc. 27; Doc. 31].

suspended, or forfeited because of failure to apply, other work, or for any other reason.

[*Id.* at 8].  Thus, under the Plan's essential terms, a "Family Social Security Benefit" is the amount that (1) would be available as a monthly benefit to Ms. Garrison under the Act; (2) whether or not payment of that amount was forfeited.  *See* [*id.*].  The Parties disagree as to whether the Widow's Benefit was ever available to Ms. Garrison, as well as whether Ms. Garrison forfeited the Widow's Benefit upon her remarriage.  [Doc. 27 at 15; Doc. 31 at ¶ 20].

The Plan does not define the term "available" nor "forfeit."  *See* [Doc. 21-2].  "The Supreme Court has often turned to dictionary definitions to discern the plain meaning of a word," *United States v. Montgomery*, 468 F.3d 715, 720 n.3 (10th Cir. 2006) (citing *Mississippi v. Louisiana*, 506 U.S. 73, 78 (1992)), and the Tenth Circuit has relied upon dictionary definitions to determine the meaning of terms in the ERISA context.  *See Carlile*, 988 F.3d at 1224.  While "a dictionary definition is not always sufficient" to determine a term's plain meaning, *Montgomery*, 468 F.3d at 720 n.3, the court finds it instructive here.  *Cf. Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1319 (10th Cir. 2009) (in ERISA case, using dictionary definitions to determine whether the plan language was ambiguous).

"Available" is defined as "capable of use for the accomplishment of a purpose;" "immediately utilizable;" or "that is accessible or may be obtained."  *Available*, Webster's Third Int'l Dictionary 150 (2002).  This definition comports with the generally accepted plain meaning of the word, so as to reflect the "common and ordinary meaning as a reasonable person in the position of the plan participant" would understand the word to have.  *Weber*, 541 F.3d at 1011.  But in the Plan's definition of Family Social Security Benefit, "available" is preceded by the phrase "would be" and is followed by the phrase "whether or not payment of such amount is delayed, suspended, or forfeited . . . for any . . . reason," [Doc. 21-2 at 8]; this additional context suggests

that a Family Social Security Benefit more broadly includes benefits which may not presently be "immediately utilizable" due to, for example, an act which forfeits—i.e., which "cause[s] the forfeiture[8] or loss of" or "lose[s] the right to"—those benefits.  *See Forfeit*, Webster's Third New Int'l Dictionary 891 (2002).

The court finds that, based on these definitions and the common understanding of these terms together, the Plan language is susceptible to a reasonable interpretation that "Family Social Security Benefit" encompasses all amounts which *would* be available—i.e., immediately utilizable or accessible to a plan participant—regardless of any act which renders a plan participant *ineligible* for the benefit—e.g., a remarriage before age 60.  *Cf. Slakman v. Admin. Comm. of Delta Air Lines, Inc.*, No. 1:15-cv-0403-CC-JFK, 2015 WL 12867007, at *3 (N.D. Ga. Nov. 12, 2015), *report and recommendation adopted*, 2016 WL 7494295 (N.D. Ga. Jan. 13, 2016), *aff'd*, 660 F. App'x 878 (11th Cir. 2016) (magistrate judge finding similar plan language to be unambiguous because the language "does not require an offset of Social Security Benefits that are *available*," but rather, "benefits that *would be available*," and Eleventh Circuit, while affirming, describing the offset as being "based on a conditionally available Social Security benefit").  The court thus finds Defendants' proposed interpretation of the Plan terms to be a reasonable one.  *See* [Doc. 31 at 11-12].

But the court also finds that a reasonable plan participant who, as Plaintiff, remarried before the age of 60 could construe the Plan language to mean that the offset applies only to those amounts which were or are actually available or immediately accessible to the beneficiary under the Act, with eligibility for such benefit as a prerequisite to its availability.  The court's finding is premised

---

[8] "Forfeiture" is defined as the "loss of some right, privilege, estate, honor, office, or effects in consequence of [some] act."  *Forfeiture*, Webster's Third New Int'l Dictionary 891 (2002).

in part on the Plan language stating that the Survivor Benefit would be reduced by "100% of the **available** Family Social Security benefit as defined in Section 1.20." [Doc. 21-2 at 32 (emphasis added)]. Stated another way, the Plan provides that the Survivor Benefit will be reduced "100% of *the available* [amount which *would be available* . . . under [the Act] . . . whether or not payment of such amount is delayed, suspended, or forfeited]." [*Id.* at 8, 32 (emphases added)].

Notwithstanding the definitional language providing that the Family Social Security Benefit includes those amounts which *would be available* absent an act of forfeiture, the Plan elsewhere plainly states that the offset applies only to those Family Social Security Benefits that are "available"—i.e., those benefits that are readily accessible to the claimant. Indeed, the Plan's use of the term "available" on two separate occasions in two distinct clauses could reasonably be read by a plan participant as including only those amounts that (1) would be available under the Act, notwithstanding any act resulting in forfeiture; *and* (2) are *then available*—i.e., in-fact accessible—to the plan participant. And such an interpretation would cause a plan participant to reasonably believe that, because the offset only applies to those benefits which are in-fact accessible, the offset would not apply to any Widow's Benefit associated with a widow who remarried before age 60.[9]

Case law is clear that the court must interpret the plan by "scrutiniz[ing] the plan documents as a whole." *Weber*, 541 F.3d at 1011. The court cannot ignore the ambiguity within the Plan terms; because the court finds that the Plan language is susceptible to more than one reasonable meaning, the court finds this language ambiguous. *Stewart*, 217 F.3d at 1290; *Miller*, 502 F.3d at

---

[9] *See* 20 C.F.R. § 404.303 ("Eligible" for a benefit "means that a person would meet all the requirements for entitlement to benefits for a period of time but has not yet applied."); *see also Geertgens v. Colvin*, No. 13 CIV. 5133 JCF, 2014 WL 4809944, at *2 (S.D.N.Y. Sept. 24, 2014) ("[C]laimants typically may not receive widow's insurance benefits if they are remarried.").

1252-53; the term has multiple, equally valid definitions, the court finds that the term is ambiguous. *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1173 (D. Utah 2019) ("Because the [clause] has multiple, equally valid definitions, the court finds that the [clause] is ambiguous.").

**Whether the Committee's Interpretation Was Arbitrary and Capricious**.   Having determined the language of the Plan is ambiguous, the court must next determine whether the Plan Administrator's interpretation was reasonable or whether it was, in the alternative, arbitrary and capricious. *Id*. at 1173.  "In reaching this decision, the court looks only to the administrative record and the explanations offered therein." *Id.*  At bottom, the court must determine whether the Plan Administrator's decision was "reasonable and made in good faith." *Weber*, 541 F.3d at 1010.  The decision "need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis." *Hancock*, 590 F.3d at 1155.  Put another way, under the arbitrary and capricious standard, this court cannot substitute its judgment for that of the Plan Administrator without first finding that the decision was "not grounded on any reasonable basis."

In its denial letter, the Committee stated:

> As explained to you in the February 7, 2017 and May 24, 2019 letters from the ESC, at age 60 (which you reached on June 17, 2019), widows are eligible to receive a benefit from the Social Security Administration.  According to Section 1.20 of the [Plan], this [Widow's Benefit] will be deducted from the [Survivor Benefit] "**whether or not payment of this benefit is delayed, suspended, or forfeited because of failure to apply, other work or for any other reason**." . . . You first became eligible for [the Widow's Benefit] with respect to your marriage to Mr. Stepp when you attained age 60, but the Committee agreed that you forfeited that benefit due to your remarriage prior to age 60."

[Doc. 21-1 at 4 (emphasis in original)].  Thus, it is clear that the Committee interpreted the Plan language—and specifically, the Family Social Security Benefit—as encompassing all benefit amounts that *would be available* to Ms. Garrison under the Act, including the Widow's Benefit, absent any action she took that would constitute a forfeiture of the Widow's Benefit.  Moreover, it is clear that the Committee construed Ms. Garrison's remarriage before the age of 60 as an act which caused the forfeiture of her Widow's Benefit.  *See generally* [*id.*].  And because the offset of the non-Plan benefits exceeded the monthly benefit amount to which Ms. Garrison was entitled under the Plan, "no monthly income survivor benefit [was] currently payable" to Ms. Garrison under the Plan.  [*Id.*].

Plaintiff nevertheless argues that the administrator's interpretation and/or decision was unreasonable, asserting that, because Ms. Garrison was never entitled to the Widow's Benefit under the applicable SSA regulations, the Committee's interpretation that Ms. Garrison forfeited payment of the Widow's Benefit is unreasonable.  [Doc. 27 at 15-16]; *see also* [*id.* at 16 (relying on the Delta ESC's May 24, 2019 letter and the Summary Plan Description to attack the Committee's interpretation of the Plan)].  As discussed above, the court acknowledges the logical appeal of Plaintiff's argument that, because she was rendered ineligible to receive the Widow's Benefit—having remarried prior to turning 60—the Benefit was never "available" to her.  *See* [Doc. 27 at 13].  Without passing on the accompanying policy considerations, this court notes that the Widow's Benefit would have been available to Ms. Garrison but for her re-marriage, and the Committee accurately observed that Ms. Garrison's claim to Survivor Benefits was not permanently extinguished under the Act simply because she remarried before the age of 60.  [Doc. 21-1 at 4 n.1].  Moreover, Plaintiff asserts that the Committee's letter to Plaintiff asking for a copy of her award certificate for the Widow's Benefit, if withdrawn, so that the offset could be based

on the "actual rather than an estimated benefit amount . . . further indicates that the Family Social Security Benefit reduction was to be based on the 'actual' amount determined to be payable by the SSA." [Doc. 27 at 16 (emphasis in original)]. Simply put, this assertion is not supported by the Plan language or the Administrative Record; the Committee's letter demonstrates only that the Committee sought to ensure that it was applying an accurate offset amount to Ms. Garrison's Survivor Benefit. And finally, Ms. Garrison's reliance on the Summary Plan Description[10] and its use of the term "applicable benefits," *see* [*id.* at 17], respectfully does not persuade the court that the Committee's decision was unreasonable; indeed, the passage cited by Plaintiff expressly states that the offset would apply "regardless of whether any actual benefits are paid" to the family member, [Doc. 21-3 at 54]—i.e., the offset would apply even if the Eligible Family Member, such as Ms. Garrison, did not actually receive any offsetable benefits, and even if that offsetable benefit was not available to the Family Member.

Here, the court's review is limited only to determining whether the Committee's interpretation of an ambiguous provision is sufficiently reasonable, *Caldwell*, 786 F. App'x at 818, and thus, not arbitrary and capricious. *Cf. Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1256 (D. Utah 2016); *J.L. v. Anthem Blue Cross*, 510 F. Supp. 3d 1078, 1090 (D. Utah 2020); *see also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir. 1999) (stating that when "more than one interpretation" of a plan "is rational, the administrator can choose any rational alternative").[11]

---

[10] "Although the plan documents contain the enforceable terms of the benefit plan, the summary plan description is intended to communicate the contents of the plan in understandable language to participants." *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199-2000 (10th Cir. 2014).

[11] But even where an administrator's interpretation "might have been within some objective zone of reasonableness, it would most certainly not be reasonable to adopt [the administrator's] reasoning as a rascally pretext for avoiding the expensive claim of one of its beneficiaries." *Phelan v. Wyo. Associated Builders*, 574 F.3d 1250, 1258 (10th Cir. 2009). While Plaintiff cursorily asserts that there is a structural conflict of interest in this case, *see* [Doc. 27 at 12], Plaintiff does

Under the applicable standard of review, the administrator's decision "need not be the only logical decision nor even the best decision." *McClenahan*, 621 F. Supp. 2d at 1144; *see also Kimber*, 196 F.3d at 1100 ("Deferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry—the construction of someone else's construction.") (quotation omitted).   Applying this deferential standard, this court cannot conclude that the Plan Administrator's decision was arbitrary and capricious.   And Plaintiff does not argue that the Plan Administrator acted in bad faith, *see* [Doc. 27], nor does the court find any record evidence of bad faith.   Accordingly, the Administrator's decision "may not be set aside." *Shafer*, 2015 WL 4055473, at *6.

   ***The Committee's Decision Was Supported by Substantial Evidence***.   Ms. Garrison does not make an express argument that the Committee's decision was not supported by substantial evidence; instead, she focuses her arguments on the interpretation of the Plan language. *See, e.g.*, [Doc. 27 at 13-16].   However, portions of her briefing could be construed as asserting such an argument. *See, e.g.*, [*id.* at 13 (arguing that the Committee failed to consider the SSA rules in its interpretation); *id.* at 15 (asserting that "the record does not demonstrate even a scintilla of evidence" to support the Committee's interpretation); *id.* at 19 (arguing the Committee failed to address the SSA letters, failed to explain its reliance on the SSA blog, and failed to consider applicable SSA regulations); *id.* ("[T]he failure to provide a reasoned basis supported by substantial evidence is arbitrary and capricious by definition.")].   Although undeveloped

---

not specifically argue that the plan administrator's decision was for the purpose of avoiding the expensive claim of a beneficiary, *see generally* [*id.*], and undeveloped arguments lacking legal authority or adequate explanation are deemed waived. *See LNV Corp. v. Hook*, No. 14-cv-00955-RM-KHR, 2018 WL 10245906, at *2 (D. Colo. June 21, 2018).   And the court does not find that the record contains evidence of such troublesome motives.   Indeed, the record shows that Defendants first informed Plaintiff that her Survivor Benefit would be offset by the Widow's Benefit on February 7, 2017—before Ms. Garrison remarried. *See* [Doc. 21-1 at 3, 13].

arguments are deemed waived, *LNV Corp. v. Hook*, No. 14-cv-00955-RM-KHR, 2018 WL 10245906, at *2 (D. Colo. June 21, 2018), the court briefly addresses what it can ascertain of Plaintiff's arguments and concludes that the Committee's decision was supported by substantial evidence.

Substantial evidence means "more than a scintilla but less than a preponderance," *Rekstad v. U.S. Bancorp.*, 451 F.3d 1114, 1119-20 (10th Cir. 2006), and is "evidence which a reasonable mind might accept as adequate to support the conclusion reached." *Paquin*, 2018 WL 3586397, at *5. Here, beyond the assertions of "procedural irregularities" which the court has already concluded were not erroneous, Plaintiff argues only that due to a "lack of thoroughness in its review" and the lack of "even a scintilla of evidence" to support its conclusion, the Committee's decision was not supported by substantial evidence. [Doc. 27 at 19]. The court disagrees. As explained above, the Committee clearly set forth the manner in which it interpreted the Plan terms and explained that, pursuant to its interpretation that Ms. Garrison's remarriage constituted a forfeiture of the Widow's Benefit, the Widow's Benefit fell within the definition of "Family Social Security Benefit" and thus was required in the benefit-offset calculations. [Doc. 21-1 at 4]. The court does not find that the Committee's denial letter contained a "lack of thoroughness;" while not lengthy, the letter sufficiently "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by" Ms. Garrison, *see* 29 U.S.C. § 1133(1), and references "the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1); *Gilbertson*, 328 F.3d at 635. Moreover, despite Plaintiff's argument that there is not "even a scintilla of evidence" supporting the Committee's decision, [Doc. 27 at 17], Plaintiff fails to explain this purported lack of evidence; on deferential review, the court notes that the Committee considered the correspondence between Plaintiff and the Delta ESC, the SSA letters, and the Plan

language, *see* [Doc. 21-1 at 3-4], and finds that these documents provide sufficient support for the Committee's interpretation and ultimate decision—particularly where the Committee's decision, and the court's review, turns on the interpretation of the Plan language rather than evidentiary documents. The court finds that the Committee's decision was "sufficiently supported by facts known to the Plan to counter a claim that the decision was arbitrary or capricious," *McClenahan*, 621 F. Supp. 2d at 1144, and for this reason, the court is not persuaded by Plaintiff's argument.

For these reasons, the court finds that the Plan Administrator's decision was not arbitrary or capricious. Ms. Garrison is accordingly not entitled to summary judgment on Claim One related to the denial of benefits, and the court will **DENY** the Motion for Summary Judgment.

### ORDER TO SHOW CAUSE

In addition to Plaintiff's Claim One challenging the denial of benefits, she asserts three other claims. [Doc. 7 at 18-20]. Defendants argue that Plaintiff's fiduciary duty claims should be dismissed as duplicative "because they can only succeed if Plaintiff succeeds on her benefit claim." [Doc. 31 at 24]. The court does not construe this request as a motion properly before the court, as a motion may not be made in a response brief. *See* D.C.COLO.LCivR 7.1(d).[12]

However, the court does note that case law authority both precludes and permits claimants from asserting fiduciary duty claims subsequent to a finding against the claimant on a benefits claim. *See Rol-Hoffman v. Reg'l Care, Inc.*, No. 20-cv-02549-LTB-SKC, --- F. Supp. 3d ----, 2021 WL 1978780, at *3 (D. Colo. May 18, 2021) (explaining Circuit- and District-court split on the

---

[12] Moreover, Defendants argue that "Plaintiff has forfeited [the fiduciary duty claims] by failing to include them in her Motion." [Doc. 31 at 24]. In support, they cite *Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL, 2017 WL 2591522, at *10 (D. Kan. June 15, 2017), wherein the court found that an issue not raised in a summary judgment brief "must be resolved at trial in light of the [movants'] failure to advance their argument in a timely fashion." But a finding that an issue not resolved at summary judgment must be resolved at trial does not support a conclusion that a claim not resolved at summary judgment must be dismissed.

issue of duplicity and citing cases).  Because this issue has not been properly briefed, the court finds it appropriate to order Plaintiff to show cause why her fiduciary-duty claims are not duplicative of her denial-of-benefits claim.  Accordingly, Plaintiff is hereby **ORDERED** to **SHOW CAUSE** in writing, on or before **January 20, 2022**, why Claims Two, Three, and Four are not duplicative of Claim One and why she should be permitted to proceed on the remaining Claims.  Defendants shall file any response on or before **January 27, 2022**.  No replies will be permitted absent leave of court.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     The Joint Motion for Determination of ERISA Case [Doc. 34] is **GRANTED**;

(2)     Plaintiff's Amended Motion for Partial Summary Judgment on Her First Claim for Relief and Memorandum in Support [Doc. 27] is **DENIED**;

(3)     Plaintiff's Claim One is **DISMISSED with prejudice**;

(4)     Summary judgment on Plaintiff's Claim One is **ENTERED** in favor of Defendants and against Plaintiff;[13]

(5)     Plaintiff shall **SHOW CAUSE** in writing, on or before **January 20, 2022**, why Claims Two, Three, and Four are not duplicative of her Claim One;

(6)     Defendants shall file any response to Plaintiff's response to the court's Order to Show Cause on or before **January 27, 2022**; and

---

[13] The court will direct the Clerk of Court to enter judgment in Defendants' favor on this Claim upon the final resolution of this matter. *See Pentland*, 519 F. Supp. 3d at 885 ("Defendant did not file a cross-motion for summary judgment, but implicitly the defendant is also seeking judgment on the administrative record.  Judgment on the administrative record is, in substance, what this Court is rendering, regardless of the label placed on it."); *see also* [Doc. 31 at 5 (Defendants requesting that the court enter summary judgment in their favor)]; *LaAsmar*, 605 F.3d at 796 (summary judgment is a vehicle for deciding an ERISA case).

(7)     No replies will be permitted absent leave of court.


DATED:  January 6, 2022                          BY THE COURT:

                                                 _____
                                                 Nina Y. Wang
                                                 United States Magistrate Judge