**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 20-cv-01921-NYW

ROBERTA STEPP GARRISON,

      Plaintiff,

v.

THE ADMINISTRATIVE COMMITTEE OF DELTA AIR LINES, INC.,
DELTA FAMILY-CARE DISABILITY AND SURVIVORSHIP PLAN, and
DELTA AIR LINES, INC.,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment on Counts II–IV ("Defendant's Motion for Summary Judgment") [Doc. 47] and Plaintiff's Cross Motion for Summary Judgment Pursuant to Order of Court Dated April 19, 2022 ("Plaintiff's Motion for Summary Judgment") [Doc. 48]. Upon review of the Motions and associated briefing, the applicable case law, and the Administrative Record, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Plaintiff Roberta Stepp Garrison ("Plaintiff" or "Ms. Garrison") initiated this civil action on July 1, 2020, challenging the denial of benefits she alleges were owed to her under the Employee Retirement Income Security Act ("ERISA"). *See* [Doc. 1]. Ms. Garrison filed a First Amended Complaint (the "Amended Complaint") on August 12, 2020. [Doc. 7]. She names three Defendants in this action: the Administrative Committee of Delta Air Lines, Inc. (the

"Committee"), the Delta Family-Care Disability and Survivorship Plan (the "Plan"), and Delta Air Lines, Inc. ("Delta").  [*Id.* at 1].

The facts underlying this case are set forth in this Court's Findings of Fact in its January 6, 2022 Memorandum Opinion and Order, *see* [Doc. 38 at 2–6], are fully incorporated herein, and are repeated only as necessary for purposes of the pending Motions.  Ms. Garrison's late husband, Richard Stepp, worked for Delta from 1969 until his retirement in 2005.  [Doc. 21-1 at 3].  Delta, through the Plan, provides disability and survivor benefits to those who participate in the Plan and their beneficiaries.  *See generally* [Doc. 21-2].  The Plan offers a Monthly Income Survivor Benefit (the "Survivor Benefit") which is payable for ten years following the death of a Delta employee or former employee subject to the Plan.  [*Id.* at 9; Doc. 21-1 at 3].  The Plan provides that the payment of the Survivor Benefit may be offset by other benefits, including "100% of the available Family Social Security [B]enefit as defined in Section 1.20."  [Doc. 21-2 at 32].  Section 1.20 of the Plan defines "Family Social Security Benefit" as:

> the total amount which would be available or the amount actually paid to the Employee's Eligible Family Members, whichever is greater, as a monthly disability, survivorship, or old age benefit, inclusive of benefits for relatives or dependents, under the Federal Social Security Act . . . whether or not payment of such amount is delayed, suspended, or forfeited because of failure to apply, other work, or for any other reason.

[*Id.* at 8].  Ms. Garrison became eligible to receive the Survivor Benefit upon Mr. Stepp's death in 2013 and began receiving monthly payments.  [Doc. 21-1 at 3–4, 11].

In February 2017, the Delta Employee Service Center (the "Delta ESC") informed Ms. Garrison that, as Mr. Stepp's widow, she would be eligible to receive a benefit (the "Widow's Benefit") from the Social Security Administration ("SSA") upon her 60th birthday.  [Doc. 21-1 at 13].  Then, in May 2019, the Delta ESC sent Ms. Garrison a letter stating that after applying Ms.

Garrison's offsets, including the Widow's Benefit, to her monthly Survivor Benefit, "there is currently no benefit due from the [Plan] effective July 1, 2019." [*Id.* at 15].

However, Ms. Garrison remarried on April 21, 2018, at the age of 58. [*Id.* at 3]. In May 2019, the SSA sent Ms. Garrison a letter informing her that, because she had remarried prior to the age of 60, she was not entitled to receive the Widow's Benefit. [*Id.* at 17].[1] Ms. Garrison submitted correspondence from the SSA to the Delta ESC to demonstrate that she was "not entitled to [the Widow's Benefit] because [she is] remarried" and to show that she is thus "entitled to benefits from Delta Family-Care Disability Survivorship Trust" despite her remarriage. [*Id.* at 16, 20].

Ms. Garrison appealed the termination of benefits to the Administrative Subcommittee, which affirmed the denial of benefits, concluding that because Ms. Garrison "became eligible for [the Widow's Benefit]" upon her 60th birthday, such amount would offset her Survivor Benefit regardless of whether she actually received the Widow's Benefit. [*Id.* at 26]. Ms. Garrison appealed the Subcommittee's decision to the Committee, which upheld the denial of benefits, stating, *inter alia*, that Ms. Garrison had "forfeited [the Widow's Benefit] due to [her] remarriage prior to age 60." [*Id.* at 4]. And because the Widow's Benefit offset was to be applied regardless of whether Ms. Garrison actually received the Widow's Benefit, the Committee informed Ms. Garrison that she was not entitled to benefits under the Plan. [*Id.* at 4].

Plaintiff then initiated this action, asserting four claims: (1) the wrongful denial of benefits against all Defendants (Claim One); (2) breach of fiduciary duty against the Committee (Claim

---

[1] A second SSA letter sent in June 2019 informed Ms. Garrison that, to qualify for the Widow's Benefit under the Social Security Act, the recipient must meet one of three criteria: (1) the recipient is not then married; (2) the recipient remarried, but only after the age of 60; or (3) the recipient remarried, but only after the age of 50 and while the recipient was entitled to benefits as a disabled widow. [Doc. 21-1 at 21]. Ms. Garrison did not meet any of these criteria. *See generally* [*id.*].

Two); (3) breach of co-fiduciary duty against Delta (Claim Three); and (4) breach of fiduciary duty and prohibited transaction against the Committee and Delta (Claim Four). [*Id.* at 17–20]. This Court entered the Parties' agreed Scheduling Order on September 3, 2020, wherein the Parties agreed that Plaintiff would file an opening brief on the merits and that, after full briefing, the Parties would file a joint motion for determination. [Doc. 17 at 3]. After a limited discovery period, *see* [*id.* at 2, 3], Ms. Garrison filed "Plaintiff's Amended Motion for Partial Summary Judgment on Her First Claim for Relief and Memorandum Brief in Support" (the "First Motion for Summary Judgment"). [Doc. 27]. In the First Motion for Summary Judgment, Ms. Garrison sought judgment in her favor only on Claim One and did not substantively address any of her other claims. *See generally* [*id.*].

Prior to ruling on the First Motion for Summary Judgment, this Court held a Status Conference on August 26, 2021 to discuss the procedural posture of this case. [Doc. 35]. Specifically, the Court asked the Parties to address their respective positions as to what would happen to Claims Two through Four after a ruling on Claim One. Plaintiff's counsel stated:

> I think if there was a holding in favor of the plaintiff on Claim [One], I don't believe there would be a need to pursue the remaining claims. As far as the other outcome, if there was a denial and Claim [One] was not granted and was dismissed, I still believe there [are] potential grounds for [Claims Two through Four]. I don't know if my client would want to pursue that.

[Doc. 36 at 3:22–4:5]. Plaintiff's counsel conceded that if summary judgment were granted in favor of Defendants on Claim One, additional briefing would be needed if Plaintiff wished to pursue her remaining claims. [*Id.* at 4:6–17]. Defense counsel stated that it was Defendants' position that Claims Two, Three, and Four "are not available [to Plaintiff], because [P]laintiff has a viable claim [with respect to Claim One] under the benefit provision of Section 502(a)(1)(B) of ERISA." [*Id.* at 5:8–11].

On January 6, 2022, this Court denied Plaintiff's First Motion for Summary Judgment on Claim One.  *See* [Doc. 38 at 30].  The Court found the language of the Plan terms ambiguous, *see* [*id.* at 20], but ultimately concluded that the Committee's interpretation of this ambiguous language was reasonable, and thus, its interpretation was not arbitrary or capricious.  [*Id.* at 24–27].  In that same Order, the Court ordered Plaintiff to show cause why her remaining fiduciary duty claims are not duplicative of Claim One and why she should be permitted to proceed on those claims.  [*Id.* at 29–30].  After two requested extensions of time, *see* [Doc. 39; Doc. 41], Plaintiff responded to the Order to Show Cause on February 18, 2022, [Doc. 44],[2] and Defendants replied on March 10, 2022.  [Doc. 45].  Thereafter, the Court concluded that it could not adequately determine on that briefing whether Plaintiff's remaining claims are duplicative of Claim One.  [Doc. 46 at 1].  The Court ordered that "to the extent that Defendants believe that the remaining claims are duplicative and/or moot, and to the extent Plaintiff believes that remand is warranted," the Parties would be granted leave to file additional cross-motions for summary judgment on or before May 31, 2022.  [*Id.*].  These Motions have been filed and are fully briefed.  [Doc. 47; Doc. 48; Doc. 49; Doc. 50].

## ANALYSIS

### I.      Plaintiff's Request to Amend Her Complaint

In both her Motion for Summary Judgment and in her Response to Defendants' Motion for Summary Judgment, Plaintiff requests leave to amend her Amended Complaint, *see* [Doc. 48 at 22 n.10; Doc. 50 at 21–24], to add a new claim "based on the alleged wrong which Plaintiff detailed in her internal, administrative appeal to Delta before she filed suit."  [Doc. 50 at 21].  Specifically,

---

[2] In her Response, Ms. Garrison argued for the first time that this case should be remanded to the Committee to determine whether it should construe the ambiguous Plan terms in favor of Plaintiff. [Doc. 44 at 4–5].

Plaintiff seeks to add a claim arising out of the fact that Delta sent Plaintiff a letter in March 2017[3]

informing her that she could continue to receive benefits upon remarrying if her remarriage

occurred prior to February 18, 2023 (ten years after Mr. Stepp's death).  [*Id.* at 13–14, ¶ 4].  Ms.

Garrison asserts that Delta's "decision to offset the phantom Social Security benefits against

[Plaintiff's] Delta benefits was contrary to the information she received" in that letter, suchthat

"Defendants' [March] 2017 letter was a half-truth, whether the result of an intentional

misrepresentation or sloppy fiduciary disclosure."  [*Id.* at 21–22].  Plaintiff has attached to her

Motion a Proposed Second Amended Complaint "which includes a Fifth Cause of Action for

Breach of Fiduciary Duties."  [Doc. 48 at 12].  Because Plaintiff substantially relies upon this new

theory of relief in her Motion for Summary Judgment and in her Response to Defendants' Motion

for Summary Judgment, the Court finds it appropriate to first rule on Plaintiff's request to amend

before turning to the Parties' arguments on Ms. Garrison's current claims.

    Even construing Plaintiff's request in her Response as an implicit motion to amend,[4]

Plaintiff has not demonstrated that leave to amend should be granted here.  Rule 15(a) provides

---

[3] Plaintiff actually asserts that Delta's benefits decision was "contrary to the information she
received in response to May 2017 [sic] inquiry."  [Doc. 50 at 21].  The Amended Complaint does
not reference any events occurring in May 2017, but the Amended Complaint and Plaintiff's
briefing consistently reference the March 2017 letter.  *See* [Doc. 7 at ¶ 12]; *see also* [Doc. 48 at
11, 15].  Similarly, so does the proposed new claim Plaintiff's Proposed Second Amended
Complaint.  [Doc. 48-1 at 27–28].  The Court thus assumes that Ms. Garrison's proposed new
claim is based on the March 2017 letter.

[4] Plaintiff's request in her Motion fails to comply with the Local Rules of Practice, which require
that "counsel for the moving party . . . shall confer or make reasonable, good faith efforts to confer
with any opposing counsel or unrepresented party to resolve any disputed matter," and "[t]he
moving party shall describe in the motion, or in a certificate attached to the motion, the specific
efforts to fulfill this duty."  D.C.COLO.LCivR 7.1(a).  Similarly, the Local Rules require that a
party filing a motion to amend must "attach as an exhibit a copy of the proposed amended or
supplemental pleading which strikes through . . . the text to be deleted and underlines . . . the text
to be added."  D.C.COLO.LCivR 15.1(b).  Plaintiff's Motion does not include a certificate of
conferral, *see* [Doc. 48], the Proposed Second Amended Complaint fails to comply with this
District's filing requirements.  *See* [Doc. 48-1 at 5].  Plaintiff's  failure to comply with the Local

that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The

Court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing

party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed,

or futility of amendment.  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Whether

to allow amendment is within the Court's discretion.  *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–

79 (10th Cir. 1996).

      First, the Court finds that Plaintiff unduly delayed seeking amendment in this case.  Delay

is undue "when the party filing the motion has no adequate explanation for the delay," *Frank*, 3

F.3d at 1365–66, or when "the party seeking amendment knows or should have known of the facts

upon which the proposed amendment is based but fails to include them in the original complaint."

*Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

Plaintiff initiated this action on July 1, 2020 and filed the Amended Complaint on August 12, 2020.

[Doc. 1; Doc. 7].  Plaintiff plainly knew of the facts which form the basis of her new proposed

claim—that Defendants sent her a letter in 2017 informing her that she would still receive benefits

after she remarried, *see* [Doc. 48-1 at 27–28],—at the outset of this litigation, and indeed, even

argues that "[t]he facts giving rise to this claim were fully pled in the existing First Amended

---

Rules is a sufficient basis to deny her request to amend.  *See Otter Prods., LLC v. Big Birds, LLC*, No. 19-cv-00626-DME-KLM, 2021 WL 4439798, at *4 (D. Colo. Sept. 27, 2021) ("Failure to comply with the duty to confer under Local Rule 7.1(a) is sufficient grounds, standing alone, on which to deny a motion."); *Granillo-Estrada v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-03445-CMA-MEH, 2021 WL 3116416, at *3 (D. Colo. July 8, 2021) (recommending denial of a motion to amend based on, *inter alia*, the movant's failure to follow Local Rule 15.1(b)), *report and recommendation adopted*, 2021 WL 3089225 (D. Colo. July 22, 2021).  However, Ms. Garrison directs the Court to Tenth Circuit case law establishing that a court may treat new allegations raised in a response to a summary judgment motion as an implied motion to amend the complaint.  [Doc. 50 at 22].  *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) "[O]ur cases interpret the inclusion of new allegations in a response to a motion for summary judgment[] as a potential request to amend the complaint."); *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 972 (10th Cir. 2021).

Complaint," such that "Defendants had adequate notice of the facts giving rise to the claim." [Doc. 48 at 12].[5]  In addition, no later than August 21, 2021, the Court informed the Parties it was interested in the impact of a ruling on Claim One upon the viability of Claims Two through Four. [Doc. 35; Doc. 36].  But it was not until after this Court suggested that Plaintiff's latter three claims may not be viable after the Court's ruling on the First Motion for Summary Judgment that Plaintiff sought leave to amend her pleading to include a new claim based on the March 2017 letter, nearly two years after filing this lawsuit.  Plaintiff provides no explanation for this delay or explain why she did not raise this claim in the first instance.  *See* [Doc. 48; Doc. 50].[6]

"Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, [or] to salvage a lost case by untimely suggestion of new theories of recovery."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quotations omitted).  Plaintiff's undue delay in seeking the amendment is alone "an adequate reason to refuse leave to amend."  *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005).

Furthermore, "a request to amend may be denied where the new theory would prejudice the moving party."  *Martinez v. Potter*, 347 F.3d 1208, 1212 (10th Cir. 2003).  "Prejudice under Rule 15 means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the other party," *Powell v. CREDO Petroleum Corp.*, No. 09-cv-01540-WYD-KLM, 2011 WL 2565490, at *4 (D. Colo. June 29, 2011), and is "the most important

---

[5] The Court notes that Plaintiff does not allege in the Amended Complaint that she relied on this letter to her detriment.  *See* [Doc. 7].

[6] Insofar as Plaintiff suggests that her current claims encompass these facts and that her proposed new claim simply "amplifies the alleged fiduciary wrongs," *see* [Doc. 50 at 15], the Court disagrees.  As explained in detail *infra*, Claims Two, Three, and Four are not based on the March 2017 letter, any reliance on that letter, or any inconsistency between that letter and Defendants' ultimate denial of benefits.  *See* [Doc. 7 at ¶¶ 42–51].

factor in considering whether amendment should be permitted." *Granite Southlands Town Ctr. LLC v. Alberta Town Ctr., LLC*, No. 09-cv-00799-ZLW-KLM, 2010 WL 2635524, at *3 (D. Colo. June 8, 2010), *report and recommendation adopted*, 2010 WL 2635527 (D. Colo. June 28, 2010). Ms. Garrison represents that her proposed amendment will require that discovery be reopened, two years after discovery closed in this case. *See* [Doc. 50 at 17, 23–24; Doc. 48 at 15 n.7]. Notably, although Plaintiff suggests that her current claims are premised on the same legal theory as the proposed new claim and maintains that she simply attempts to provide more detail to support that new claim, *see* [Doc. 50 at 15; Doc. 48 at 22 n.10], Plaintiff does not explain why she did not take this purportedly required discovery when discovery was still open. *See generally* [Doc. 48; Doc. 50]. "A need to reopen discovery [and] a delay in proceedings . . . are indicators of prejudice." *US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-cv-00923-HCN-PMW, 2020 WL 2616212, at *2 (D. Utah May 22, 2020).

The Court concludes that Plaintiff's requested amendment to add a new claim based on a new theory of relief nearly three years after this case was filed would unduly prejudice Defendant and disrupt the efficient administration of this action. "Both the Court and Defendant[] are entitled to expect that by a date certain, Plaintiff's claims will be fixed, and the case will proceed on that basis." *Brooks v. Colo. Dep't of Corr.*, No. 18-cv-02578-PAB-SKC, 2022 WL 5201759, at *4 (D. Colo. May 9, 2022), *report and recommendation adopted sub nom. Brooks v. Corr. Health Partners*, 2022 WL 4377131 (D. Colo. Sept. 22, 2022). Because discovery is closed and Plaintiff represents that discovery is necessary to proceed on her proposed new claim, Plaintiff would need to formally move to reopen discovery to obtain the relief she seeks, necessitating a full round of motions practice by the Parties and a ruling from the Court. And then, assuming that the Court *did* grant Plaintiff's request to reopen discovery with respect to her new claim, there would

presumably be *yet another* round of dispositive motion briefing after that supplemental discovery period closed. "This is neither an efficient use of the Court's resources nor does it further the stated purpose of the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Reiskin v. Greyhound Lines, Inc.*, No. 20-cv-02605-WJM-NRN, 2021 WL 9032885, at \*3 (D. Colo. Nov. 16, 2021) (quoting Fed. R. Civ. P. 1), *report and recommendation adopted*, 2022 WL 2339408 (D. Colo. June 29, 2022). Denial of Plaintiff's request to amend is appropriate on this basis. *See, e.g.*, *Granite Southlands*, 2010 WL 2635524, at \*4 ("Assuming that additional discovery and dispositive motions would be necessary, as well as recognizing the fact that Defendant would be required to supplement its pleadings in response to the new claim," concluding that undue prejudice would result if the plaintiff were permitted to amend and add a new claim); *Flannery v. Boxer F2, L.P.*, No. 20-cv-00099-DDD-STV, 2022 WL 584244, at \*3 (D. Colo. Jan. 27, 2022) (finding undue prejudice would result if plaintiff were permitted to add new claims where discovery was completed and dispositive motions had been filed), *report and recommendation adopted*, 2022 WL 579541 (D. Colo. Feb. 25, 2022).[7]

In sum, Plaintiff could have asserted a claim based on this alleged breach of fiduciary duty on July 1, 2020, the day that she filed this lawsuit. It would not be in the interest of judicial

---

[7] Plaintiff also requests "leave of Court under Rule 56 to conduct brief discovery on the system which resulted in the inaccurate and inconsistent information being provided to Plaintiff," i.e., the March 2017 letter. [Doc. 48 at 12]. Rule 56(d) permits a party to request a deferred ruling on a motion for summary judgment if the party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion for summary judgment. Fed. R. Civ. P. 56(d)(1)–(3). Rule 56 does not contemplate that, at the summary judgment stage, a plaintiff can seek leave to add an additional claim presenting a new legal theory of relief and then take additional discovery on that claim after discovery has closed. "The policy behind Rule 56(d) is to safeguard against an 'immature or improvident grant of summary judgment where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Wagner Equip. Co. v. Wood*, No. CIV. 11-466 MV/ACT, 2012 WL 988022, at \*5 (D.N.M. Mar. 20, 2012). These circumstances are not present here.

economy or fairness to permit Plaintiff a second chance to assert a viable claim at this late stage

in the litigation now that she has the benefit of the Court's prior rulings in this case.  Plaintiff's

request to amend her Amended Complaint is, therefore, **DENIED**.  The Court focuses its analysis

only on Plaintiff's remaining claims alleging various breaches of fiduciary duties.[8]

## II.     Breach of Fiduciary Duty Claims Under ERISA

The limited question before the Court is whether Ms. Garrison may proceed on her

fiduciary duty claims (Claims Two, Three, and Four) separately from her benefits claim (Claim

One), or if her latter three claims are "'duplicative' or simply . . . 'repackaged benefits claim[s],'"

which "cannot be brought." *Polonczyk v. Anthem BlueCross & BlueShield*, 586 F. Supp. 3d 648,

654–55 (E.D. Ky. 2022); *see also Clark v. Ford Motor Co.*, 430 F. Supp. 3d 265, 277 (E.D. Mich.

2019) ("[C]ourts have held that a plaintiff may not 'repackage' a denial-of-benefits claim under

§ 502(a)(1)(B) as a § 502(a)(3) fiduciary breach claim.").  Relevant here, a beneficiary can assert

an ERISA claim under "Section 502(a)(1)(B)[,] . . . which allows a participant or beneficiary to

recover benefits due under the terms of a plan, to enforce rights under the plan, or to clarify rights

---

[8] Plaintiff states that "[i]t should be remembered that this motion proceeding was precipitated by *Defendants'* argument in [their] cross briefing on [Claim One] that Plaintiff's remaining claims should fail.  Plaintiff did not bring these claims to the forefront in the original summary judgment proceeding."  [Doc. 48 at 22 n.10].  Plaintiff is correct.  The Parties agreed to one round of dispositive motion briefing in the Scheduling Order and agreed that Plaintiff would file the affirmative motion on the merits.  *See* [Doc. 17 at 3].  It was Plaintiff who made the strategic decision to only seek a resolution of Claim One in the First Motion for Summary Judgment, declining to address any of her other claims. *See* [Doc. 27].  Arguably, Plaintiff abandoned Claims Two, Three, and Four by failing to address them in her First Motion for Summary Judgment.  *See Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 3:15-cv-02595-BRM-TJB, 2021 WL 2549343, at *14 (D.N.J. June 21, 2021) (collecting cases); *Executors of Est. of Wallner v. Unum Life Ins. Co. of Am.*, 221 F. Supp. 3d 967, 972 (N.D. Ohio 2016).  In any event, it is unclear how Plaintiff intended to bring Claims Two through Four to resolution in this matter absent this Court's *sua sponte* orders directing further substantive briefing.  While the instant summary judgment briefing may not have been Plaintiff's ideal method to resolve the remaining claims, the Court must ensure that the cases pending before it move forward to resolution in a just and efficient manner.  Fed. R. Civ. P. 1.

to future benefits under the plan," as well as "Section 502(a)(3)[,] . . . which allows a plan participant to bring a civil action '(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.'" *Rol-Hoffman v. Reg'l Care, Inc.*, 540 F. Supp. 3d 1027, 1032 (D. Colo. May 18, 2021) (quoting 29 U.S.C. § 1132(a)(1)(B), (a)(3)).[9]   The Supreme Court has stated that claims seeking a "remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims" arise under Section 502(a)(1)(B), and other claims seeking "'appropriate equitable relief' for 'any' statutory violation" arise under Section 502(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).   "In other words, § 502(a)(3) 'act[s] as a safety net . . . for injuries caused by violations that § 502 does not elsewhere adequately remedy.'"   *Rol-Hoffman*, 540 F. Supp. 3d at 1032 (quoting *Varity*, 516 U.S. at 512) (alterations in original).

The *Varity* Court cautioned, however, that relief under § 502(a)(3) is "*only* available where Congress has not 'elsewhere provided adequate relief for a beneficiary's injury,' because when other adequate relief is available, equitable relief 'normally would not be appropriate'" under § 502(a)(3).   *Clark*, 430 F. Supp. 3d at 277 (quoting *Varity*, 516 U.S. at 512).   The United States Court of Appeals for the Sixth Circuit has interpreted *Varity* to "limit[] the applicability of [§ 502(a)(3)] to beneficiaries who may not avail themselves of [§ 502]'s other remedies." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).   In other words, where § 502(a)(1)(B) "provides a remedy for [the beneficiary's] alleged injury that allows [her] to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which [s]he believes [s]he is

---

[9] ERISA § 502(a)(1)(B) is located in the United States Code at 29 U.S.C. § 1132(a)(1)(B); ERISA § 502(a)(3) is located at 29 U.S.C. § 1132(a)(3).

entitled, [s]he does not have a right to a cause of action for breach of fiduciary duty" based on that denial of benefits under § 502(a)(3). *Id.* (concluding that a beneficiary could not bring a breach of fiduciary duty claim where he had availed himself of the remedy available under § 502(a)(1)(B) to challenge the denial of benefits, and the district court affirmed the denial of benefits).

"The *Varity* Court thus emphasized that ERISA remedies are concerned with the adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing." *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015). "A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B), only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." *Id.* at 372; *id.* at 373 ("Impermissible repackaging is implicated whenever, in addition to the particular adequate remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury."). "[I]f the circumstances of a case indicate that a Section 502(a)(1)(B) remedy is or would be adequate to address the plaintiff's alleged injury, the court need not address a remedy sought under Section 502(a)(3) for the same injury." *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1222 (D. Utah 2019).

## III.   Plaintiff's Remaining Claims

Defendants posit that each of Plaintiff's remaining claims for breach of fiduciary duty are precluded under *Varity*, arguing that each of Plaintiff's claims seeks to remedy the same harm underlying Claim One.  [Doc. 47 at 18–19].[10]  In her Motion for Summary Judgment and in her

---

[10] In the alternative, Defendants argue that Plaintiff cannot succeed on her remaining claims because she cannot establish causation.  [Doc. 47 at 20–21].  Ms. Garrison does not respond to this argument in her Response.  *See generally* [Doc. 50].

Response to Defendants' Motion for Summary Judgment, Ms. Garrison does not differentiate between her remaining claims or raise distinct arguments as to the separate claims. *See* [Doc. 48 at 16–20; Doc. 50 at 19–21]. For purposes of clarity, the Court first addresses each of Plaintiff's remaining claims with respect to their viability under *Varity* before turning to Plaintiff's collective arguments in support of her claims.

***Claim Two***. Claim Two is a breach of fiduciary duty claim asserted against the Committee. [Doc. 7 at 18]. Plaintiff alleges that the Committee "breached its fiduciary duty by its failure to engage in a prudent and careful review of the Social Security Administration regulations governing the SSA benefit, leading to an unreasonable, incorrect, arbitrary, and capricious interpretation of the D&S Plan definition of 'Family Social Security Benefit.'" [*Id.* at ¶ 43].

In their Motion for Summary Judgment, Defendants argue that Claim Two is nothing more than a repackaged denial of benefits claim, improperly asserted under § 502(a)(3). [Doc. 47 at 18]. Plaintiff insists that Claim Two is not a repackaged denial of benefits claim, [Doc. 48 at 11; Doc. 50 at 19–21], but notably, Plaintiff raises no argument that addresses Claim Two *specifically* or explains why Claim Two seeks relief for an injury that is separate and distinct from the denial of ERISA benefits. [Doc. 48 at 16–20; Doc. 50 at 19–21].

The Court respectfully agrees with Defendants. Claim Two is based on the Committee's alleged "failure to engage in a prudent and careful review of the Social Security Administration regulations governing the SSA benefit, *leading to an unreasonable, incorrect, arbitrary and capricious interpretation of the D&S Plan definition of 'Family Social Security Benefit*.'" [Doc. 7 at ¶ 43 (emphasis added)]. Elsewhere in the Amended Complaint, Plaintiff alleges that the Committee's interpretation of the Plan "is a disingenuous interpretation . . . in an attempt to rationalize the denial of a benefit for which there is no basis consistent with ERISA's fiduciary

standards," and that "[s]uch a decision is arbitrary and capricious." [*Id.* at ¶ 25]. Ms. Garrison alleges that Defendants' collective wrongful conduct "caused a wrongful denial of benefits to Plaintiff, delay in the monthly income survivor benefit she should have received for all months following June 2019, [and] an unreasonable, arbitrary and capricious interpretation of the Family Social Security Benefit offset under the D&S Plan." [*Id.* at ¶ 52].

Although Claim Two does not plainly reference the denial of benefits and instead relies on what Plaintiff believes was an incorrect, arbitrary, or capricious interpretation of the Plan, this alleged harm is inextricable from the ultimate denial of benefits paid to Plaintiff. Indeed, the end result of the Committee's interpretation was the denial of benefits, and *without* that denial, Plaintiff would have no particularized injury to speak of. "[T]he reality remains clear: [Ms. Garrison] suffered one injury, the denial of [her] benefits." *Rochow*, 780 F.3d at 374; *see also Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840 (6th Cir. 2007) (recognizing that § 502(a)(1)(B) provides a remedy for a claim alleging erroneous interpretation of a benefits plan); *Stewart v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. CIV. WDQ-09-2612, 2011 WL 3020890, at *10 (D. Md. July 20, 2011) (concluding that a claim for breach of fiduciary duty that "[arose] from the Board's interpretation and application of the Plan" was an improperly repackaged denial of benefits claim).

As noted above, the *Varity* Court expressly stated that § 502(a)(1)(B) provides a "remedy for breaches of fiduciary duty with respect to the interpretation of plan documents," *Varity*, 516 U.S. at 512, and Ms. Garrison has not "identif[ied] any way in which the remedy available under § 502(a)(1)(B) . . . is inadequate to make [her] whole." *Rochow*, 780 F.3d at 374.[11] This is thus a

---

[11] Indeed, given Plaintiff's counsel's representation at the August 26, 2021 Status Conference that if Plaintiff were to succeed on Claim One, there "would [not] be a need to pursue the remaining claims," [Doc. 36 at 3:22–25], and given Plaintiff's strategic choice to only move for summary

case "where Congress [has] elsewhere provided adequate relief for [the] beneficiary's injury," i.e., a claim for wrongful denial of benefits under § 502(a)(1)(B), and equitable relief is not "appropriate" under § 502(a)(3). *Varity*, 516 U.S. at 515; *see also Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*, No. CV-15-01547-PHX-DLR, 2016 WL 107838, at *2 (D. Ariz. Jan. 11, 2016) (dismissing claim where "[t]here is no meaningful difference between the harm [the plaintiff] suffered as a result of [the defendant's] alleged fiduciary misconduct and the harm she suffered as a result of being denied benefits."). Claim Two is thus an improperly repackaged denial of benefits claim that cannot be asserted under § 502(a)(3).

**Claim Three**.  Ms. Garrison's third claim is asserted against Delta only.  [Doc. 7 at 19]. Plaintiff alleges that

> [t]he actions of the ESC, Subcommittee, and Committee *in the course of the termination of Plaintiff's [Survivor Benefit], including without limitation the arbitrary and capricious interpretation of the [Plan]*, indicates a failure on the part of Delta to ensure that the employees serving in these fiduciary functions are adequately trained in their obligations under ERISA toward participants and beneficiaries such as researching primary resources for regulations instead of relying on internet blog posts, and a failure to adequately monitor such employees with regard to their compliance with ERISA standards of conduct for fiduciaries, *all of which has contributed to Plaintiff's D&S Plan benefit to be wrongfully terminated*.

[*Id.* at ¶ 46 (emphasis added)].  She alleges that Delta "had knowledge of the Committee's breach of fiduciary duty in approving the wrongful termination of [the Survivor Benefit]," but "failed to take any actions to remedy the Committee's breach of fiduciary duty."  [*Id.* at ¶¶ 47–48].

Defendants argue that Claim Three "seek[s] to remedy the same benefit denial" as Claim One, simply packaged as a failure to oversee the individuals who "engaged in the bad process [that] led to an incorrect benefit denial."  [Doc. 47 at 18–19].  Again, Plaintiff does not articulate

---

judgment on Claim One, it appears that Plaintiff understood the remedy afforded under § 502(a)(1)(B) adequate to make her whole for what she believes was a wrongful denial of benefits.

any distinct injury upon which Claim Three is based that is separate from the injury asserted in Claim One.  [Doc. 48 at 10, 16–20; Doc. 50 at 19–21].

The Court again respectfully agrees with Defendants.  To be sure, "acts for which a fiduciary may be found liable include failing to exercise due care in hiring, retaining, or training non-fiduciary agents."  *Zuckerman v. United of Omaha Life Ins. Co.*, No. 09-cv-04819, 2010 WL 2927694, at *7 (N.D. Ill. July 21, 2010).   But although Plaintiff couches Claim Three as challenging the process by which Defendants arrived at their decision to deny her benefits, Claim Three remains a veiled attempt to challenge the interpretation of the Plan and to remedy what Plaintiff believes was the wrongful denial of benefits—the only injury alleged in Claim Three. [Doc. 7 at ¶ 46]; *see also* [*id.* at ¶ 52 (alleging that the "above-alleged wrongful conduct caused a wrongful denial of benefits to Plaintiff, delay in the monthly income survivor benefit she should have received[,] [and] an unreasonable, arbitrary and capricious interpretation of" the Plan)].   It follows that permitting Ms. Garrison to obtain equitable relief under § 502(a)(3) for the same injury forming the basis of Claim One under § 502(a)(1)(B) "would contravene the scheme established by Congress as well as the Supreme Court's teaching in *Varity*."   *Rochow*, 780 F.3d at 374; *Fillingim v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 5:12-cv-01816, 2013 WL 5466814, at *10 (N.D. Ohio Sept. 30, 2013) (concluding that breach of fiduciary duty claim was a repackaged denial of benefits claim where the plaintiff "claim[ed] the same injury as a result of the alleged breach of fiduciary duty as from the alleged improper denial of benefits").

***Claim Four***.  In Claim Four, which is asserted against the Committee and Delta, Ms. Garrison asserts that "[t]he careless effort of the Committee to prudently evaluate Plaintiff's claim under the . . . Plan was an outrageous failure to exercise the fiduciary duties required of the Committee."  [Doc. 7 at ¶ 50].  Plaintiff alleges that "[t]his failure demonstrates a clear conflict of

interest between Delta and the Committee members as employees of Delta" because "Delta was self-funding the entire cost of the [Survivor Benefit], with the effect that every denial of such benefit would reduce the funding obligation of . . . Delta." [*Id.*]. And finally, Plaintiff alleges that this conflict of interest "result[ed] in the members of the Committee dealing with the . . . Plan assets in their own interest by *unreasonably denying Plaintiff's claim* to the benefit of their employer Delta." [*Id.* (emphasis added)]. Ms. Garrison incorporates certain allegations from other claims into Claim Four, including the allegations contained in Claim One. [*Id.* at ¶ 49].[12]

Defendants argue that Claim Four is a repackaged benefits claim because it "claim[s] that . . . bad process . . . led to an incorrect benefit denial." [Doc. 47 at 18–19]. Ms. Garrison does not identify any particular injury arising out of Claim Four to support her argument that Claim Four is appropriately raised under § 502(a)(3). *See* [Doc. 48; Doc. 50].

The only injury alleged in Claim Four, from the Court's view, is the "unreasonabl[e] den[ial] [of] Plaintiff's claim" for benefits. [Doc. 7 at ¶ 50]. And as mentioned above, Ms. Garrison describes her injuries collectively as follows: "[t]he Defendants' above-alleged wrongful

---

[12] Plaintiff also alleges that "[b]y reason of the breach of fiduciary duties by one or more Defendants under paragraphs 49 and 50, such Defendant fiduciaries engaged in a prohibited transaction under ERISA § 406(b)(1)." [Doc. 7 at ¶ 51]. It is not entirely clear whether Plaintiff intends to assert a separate "prohibited transaction" claim under 29 U.S.C. § 1106, which states that fiduciaries shall not "act in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," 29 U.S.C. § 1106(b)(2), or whether Plaintiff is simply using allegations of a prohibited transaction to bolster her breach of fiduciary duty claim. *See* [Doc. 7 at ¶¶ 50–51]; *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 92 (3d Cir. 2012) (describing the two types of claims as separate claims). The Court does not construe Claim Four as asserting a separate prohibited transaction claim, as Plaintiff does not reference the applicable statute anywhere else in the Amended Complaint, including her paragraph setting forth the applicable law, [Doc. 7 at ¶ 1], does not plainly delineate a separate claim on this basis, [*id.* at ¶¶ 49–51], does not seek any relief that could be tied to the purported prohibited transaction, [*id.* at 21–22], and does not use the phrase "prohibited transaction" at any point in her Motion for Summary Judgment or Response or otherwise argue that this is a basis for Claim Four to survive summary judgment in Defendants' favor. [Doc. 48; Doc. 50].

conduct caused a wrongful denial of benefits to Plaintiff, delay in the monthly income survivor benefit[,] [and] an unreasonable, arbitrary and capricious interpretation of the [Plan]." [*Id.* at ¶ 52]. Thus, as with Claims Two and Three, Ms. Garrison does not allege any injury separate and distinct from the denial of benefits that would permit her to assert a claim under § 502(a)(3). Relief is available for Plaintiff's injury under § 502(a)(1)(B), *Varity*, 516 U.S. at 512, and Ms. Garrison raises no argument that this relief is inadequate to make her whole. *See* [Doc. 48; Doc. 50]. Plaintiff cannot repackage her unsuccessful § 502(a)(1)(B) claim as a claim under § 502(a)(3) in the hopes of attaining a second chance to succeed on the merits. *Boothe v. Deseret Mut. Benefit Administrators*, No. 1:16-cv-00008-DN, 2017 WL 2787748, at *12 (D. Utah June 27, 2017) (a plaintiff "cannot rotate through the potential bases for ERISA civil enforcement actions until she lights on the one that sticks"); *Rochow*, 780 F.3d at 372.

    *Plaintiff's Arguments*.  Ms. Garrison raises a number of arguments in support of her pending claims; however, the Court reiterates that at no point in her substantive briefing did she attempt to (a) identify an injury underlying Claims Two, Three, or Four that is separate from the denial of benefits; or (b) demonstrate that the relief available under § 502(a)(1)(B) is inadequate to make her whole for any such injury.

    First, Plaintiff primarily rests her arguments on her new theory of relief, suggesting that her singular "equitable claim" "rests on independent breaches by Defendants in their disclosures to Plaintiff"—i.e., the March 2017 letter representing that Plaintiff would continue to receive benefits after her remarriage, *see* [Doc. 48 at 15, 16–17], such that "Defendants breached their fiduciary duties in misrepresenting how they would interpret the Plan in" the March 2017 letter. [*Id.* at 17]; *see also* [Doc. 50 at 11, 15–17 (Plaintiff relying on this new theory in her Response)]. Ms. Garrison insists that she was harmed "by Defendants' inconsistent interpretation and

communication to Plaintiff about their interpretation." [Doc. 48 at 17]. But Ms. Garrison's current claims are not based on the March 2017 letter; instead, they are limited to purported breaches of fiduciary duty arising out of the Committee's failure to "engage in a prudent and careful review of the Social Security Administration regulations," [Doc. 7 at ¶ 43]; Defendant's alleged failure to adequately monitor or train its employees, [*id.* at ¶¶ 45–46]; and the Committee's and Delta's alleged failure to prudently evaluate Plaintiff's claim. [*Id.* at ¶ 50; *id.* at ¶¶ 40–43].[13]   Nor does Ms. Garrison allege in the Amended Complaint that she relied on the letter or identify any injury arising from the letter or her purported reliance thereon. *See generally* [*id.*]. Plaintiff cannot recharacterize her claims at this stage in the proceedings in an attempt to survive summary judgment. *See Rusch v. United Health Grp. Inc.*, No. 2:12-cv-00128, 2013 WL 3753947, at *11 (S.D. Tex. July 15, 2013) (rejecting the plaintiff's argument that her breach of fiduciary duty claim arose from the defendant's failure to provide plan documents where "there [was] no mention of this in" the plaintiff's complaint).

Ms. Garrison also spends much time arguing that she may simultaneously bring claims for legal and equitable relief. *See* [Doc. 48 at 13–16; Doc. 50 at 17 ("The Federal Rules of Civil Procedure recognize that a litigant is entitled to plead in the alternative and pursue different types of remedies.")]. Respectfully, this is not the issue before the Court. There is no question that

---

[13] The Amended Complaint references the March 2017 letter in one paragraph. *See* [Doc. 7 at ¶ 12]. Plaintiff claims in her Response that Claims Two, Three, and Four "incorporate[] all previous contentions," [Doc. 50 at 10–11, ¶¶ 34–37], but this is not accurate. None of Plaintiff's current claims incorporate all prior allegations, *see* [Doc. 7 at ¶¶ 42–51], and none of Plaintiff's pending claims are based on the letter, reference the letter, or incorporate this factual allegation. *See* [*id.*]. Furthermore, the Court notes that Ms. Garrison now takes the position that additional discovery is needed to support a claim for breach of fiduciary duty based on this theory, [Doc. 50 at 21–24], but she stated in her Amended Complaint that "there is no expectation of any extensive discovery necessary in this matter since the administrative record for this matter is adequate." [Doc. 7 at ¶ 7]. Had Plaintiff's current claims relied on this theory, the Court suspects that Plaintiff would have requested the discovery she now seeks.

Plaintiff can plead alternative theories of relief under Rule 8 of the Federal Rules of Civil Procedure; indeed, "[f]ederal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims." *Boulware v. Baldwin*, 545 F. App'x 725, 729 (10th Cir. 2013). But this case is well beyond the pleading stage, and the limited inquiry before the Court is whether Plaintiff's latter three claims are based on injuries that are separate and distinct from the denial of benefits, as required under § 502(a)(3). Thus, the cases cited by Ms. Garrison discussing pleading standards, *see* [Doc. 50 at 17], are of no help to her here.

Equally inapplicable is Plaintiff's reliance on *Cigna Corp. v. Amara*, 563 U.S. 421 (2011). *See* [Doc. 48 at 13]. She states that *Amara* is "illustrative of the ability of a [beneficiary] . . . to obtain relief for breach of fiduciary duties when relief [is] not available under the plan language under" § 502(a)(1)(B), [*id.*], which the Court construes as an argument that if relief is properly denied under § 502(a)(1)(B), a plaintiff could then turn to § 502(a)(3) to seek relief for the same harm. *See* [*id.* n.5 (Plaintiff arguing that "since the Court has dismissed the (a)(1)(B) claim[,] . . . under the Court's ruling, relief under that statutory section is 'not available.'")]. This is not an accurate description of *Amara*, wherein the Supreme Court ruled that the district court's remedy of reforming the defendant's pension plan was not authorized under § 502(a)(1)(B) because the statute "speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *Amara*, 563 U.S. at 436, 438–39 (quoting 29 U.S.C. § 1132(a)(1)(B) (emphasis in original)). The Court further instructed, however, that "the types of remedies the [district] court entered . . . fall within the scope of the term 'appropriate equitable relief' in § 502(a)(3)," and remanded the case for the district court to determine whether equitable relief was appropriate under § 502(a)(3). *Id.* at 442–43. *Amara* did not address when a plaintiff is barred from asserting a claim under § 502(a)(3) because there is adequate relief available under § 502(a)(1)(B).

Nor did *Amara*, as Plaintiff suggests, "change[] the prior interpretations afforded to [*Varity*]." *See* [Doc. 48 at 14]; *see also* [Doc. 50 at 20 ("Despite the ruling in *Amara*, Defendants persist in asserting the outdated view of *Varity*.")].[14]  "With one possible exception, courts have consistently held that *Amara* and [its] progeny did not alter the rule announced in *Varity*." *Leach v. AETNA Life Ins. Co.*, WMN-13-2757, 2014 WL 470064, at *4 (D. Md. Feb. 5, 2014) (collecting cases); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1023 (S.D. Cal. 2017) ("[*Amara*] . . . did not address the holding in *Varity*, and did not overturn or overrule *Varity*."). "Nowhere in *Amara* did the [Supreme] Court state that a plaintiff is entitled to pursue simultaneous relief under §§ 502(a)(1)(B) and 502(a)(3) if relief under the former is adequate." *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. CV ELH-17-2729, 2018 WL 4052182, at *13 (D. Md. Aug. 23, 2018).  "While *Amara* . . . may have expanded the kinds of equitable remedies available under § 502(a)(3), those remedies are still only available when adequate relief for a beneficiary's injury is not available elsewhere." *Leach*, 2014 WL 470064, at *4.

Furthermore, insofar as Plaintiff impliedly argues that because the Court found in favor of Defendants on Claim One, she should be permitted to proceed on Claims Two through Four because she cannot obtain "duplicative recover[ies]," [Doc. 48 at 13 n.5, 15], the fact that Plaintiff

---

[14] Indeed, the cases cited by Plaintiff simply recognize that *Amara* may have significantly changed the legal landscape with respect to the scope of equitable relief available under § 502(a)(3).  *See Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 876, 878–79 (7th Cir. 2013) (stating that *Amara* "significantly altered the understanding of equitable relief available under section [502](a)(3)" because it "clarified that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty"); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 720 (8th Cir. 2014) (the Eighth Circuit "discuss[ing] . . . the[] three types of equitable claims" under § 502(a)(3), i.e., surcharge, reformation, and estoppel, and "explain[ing] how *Amara* has changed the availability of relief and the scope of that relief"); *see also Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ("Applying *Amara*'s conclusion that a plaintiff may seek relief under both § [502](a)(1)(B) and § [502](a)(3) does not contravene the ruling in *Varity*.").

22

was unsuccessful on Claim One does not permit her to repackage this unsuccessful claim under § 502(a)(3). "A claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), *irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B)*, only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate." *Rochow*, 780 F.3d at 372 (emphasis added); *see also Christine S.*, 428 F. Supp. 3d at 1222 ("[I]if the circumstances of a case indicate that a Section 502(a)(1)(B) remedy is *or would be adequate* to address the plaintiff's alleged injury, the court need not address a remedy sought under Section 502(a)(3) for the same injury." (emphasis added)). "[A]dequate relief does not mean recovery[;] it means that an adequate remedy is available." *Nemitz v. Metro. Life Ins. Co.*, No. 12 C 8039, 2013 WL 3944292, at *4 (N.D. Ill. July 31, 2013).

Finally, if there were any remaining doubt that Claims Two, Three, and Four are repackaged claims seeking to remedy the denial of benefits, that doubt is extinguished by Plaintiff's briefing. In her Motion for Summary Judgment, Plaintiff argues that the Court "should surcharge Defendants and order that they repay Ms. Garrison the sums which they wrongfully deducted from her Family Income Benefits." [Doc. 48 at 22]. In so arguing, Plaintiff claims that "[t]his is to be distinguished from the Court's review of Plan language for purposes of the [benefits] claim," as "[i]n conducting its review under [§ 502](a)(3), the Court would be reviewing Delta's breach of fiduciary duties *de novo*." [*Id.*]. She asserts that "[w]hen the Court weighs the evidence in [Claims Two, Three, and Four], the Court must employ traditional rules of construction and construe the ambiguous terms of the Plan against the drafter." [*Id.* at 12]; *see also* [Doc. 50 at 19 ("[U]nlike an action under [§ 502](a)(1)(B), this Court's judicial review of Defendants' interpretation and actions are not subject to the same stringent abuse of discretion standard of

review.")].  It is clear from this argument that Ms. Garrison seeks a second bite at the apple to challenge Defendants' denial of benefits under a less deferential standard than previously employed by the Court, which is precisely the type of conduct cautioned against by the Supreme Court in *Varity*.  *See* 516 U.S. at 514–15.

In sum, Claims Two, Three, and Four seek a remedy for the same injury asserted in the now-resolved Claim One.  Because a remedy was available to Plaintiff for that harm under § 502(a)(1)(B), and because Plaintiff does not argue that this remedy was inadequate, Plaintiff cannot now use § 502(a)(3) as a new vehicle to seek relief for that same injury.  Accordingly, summary judgment is **GRANTED** in favor of the Committee on Claim Two, in favor of Delta on Claim Three, and in favor of the Committee and Delta on Claim Four.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment on Counts II–IV [Doc. 47] is **GRANTED**;

(2)    Plaintiff's Cross Motion for Summary Judgment Pursuant to Order of Court dated April 19, 2022 [Doc. 48] is **DENIED**;

(3)    Judgment is **ENTERED** in favor of Defendants with respect to Claims Two, Three, and Four;

(4)    Defendants are entitled to their costs pursuant to Rule 54 of the Federal Rules of Civil Procedure and Local Rule 54.1; and

(5)      The Clerk of Court is directed to **TERMINATE** this case.


DATED:  February 22, 2023                          BY THE COURT:

                                                    _____
                                                    Nina Y. Wang
                                                    United States District Judge